Tompkins
v.
Sands.

New trial denied.

---

## TOMPKINS *vs.* SANDS.

*Case* lies against *a justice of the peace* who *corruptly* refuses to take the security required to be given on the prosecution of an *appeal ;* his act in relation to such proceeding being of a *ministerial* and not of a *judicial* character.

For a *judicial* act no action lies, but for an injury, arising from the misfeasance or nonfeasance of a *ministerial officer*, the party has redress in an action on the case.

When an officer is sued for an act in which he is bound to exercise discretion, the action will not lie, unless it appears that the act complained of was done wilfully and maliciously.

ERROR from the Delaware common pleas. Tompkins sued Sands in a justice's court for refusing to accept an *appeal bond* in a suit in which Elliot had obtained a judgment against Tompkins, before Sands as a justice of the peace. The plaintiff declared in writing, in a special action on the case, setting forth the commencement of the suit by Elliot against Tompkins, before Sands as a justice of the peace, and the rendering of a judgment therein against Tompkins for $50 and costs; that within ten days thereafter, Tompkins tendered to Sands a bond, duly executed with sufficient surety, which Sands refused to received ; that one Solomon Tuttel signed and sealed the bond as surety, offered to swear before Sands that he was worth double the penalty mentioned in the bond, and offered himself as surety for Tompkins on the appeal ; but that Sands refused to receive the bond, and to take Tuttel as surety and thereby prevented Tompkins from appealing the cause and reversing the judgment. The declaration also charged generally that Sands, acting as a justice of the peace, had *unjustly and oppressively* prevented Tompkins from

appealing and reversing a certain judgment, unjustly obtained before and rendered by him, which judgment could on appeal have been reversed or greatly reduced. Sands pleaded the *general issue* and justified. Tompkins obtained a verdict for $50, on which judgment was rendered with costs. Sands appealed to the Delaware common pleas. On the trial in that court, Sands admitted the judgment rendered by him in favor of Elliot against Tompkins, and the following facts were adduced in evidence: An *appeal bond*, in due form, was executed by Tompkins, and by Tuttel as his surety, and on the last day for appealing, the bond, together with the costs and notice of appeal, were tendered to Sands, who refused to receive the same. Tuttel offered to swear that he was a freeholder, and worth double the amount of the penalty of the bond, to which offer Sands replied that he would not take his oath. When the papers were tendered to Sands, he and Elliot *whispered* together; Sands said that Elliot told him Tuttel was not good (as surety) and he, Sands, did not think him good. When Tuttle offered to justify as surety, Sands was *angry* and said he would not take him nor his oath; Tuttle told him his conduct was oppressive, to which he answered that he would take the responsibility on his own shoulders. When Sands refused to accept Tuttel as surety, another witness asked him whom he would take for bail; Sands named a Mr. Leet and four other persons. The witness told him he had named those whom he knew Tompkins could not get; there was not time. Sands said if they would come next day or Monday, he would take them. This witness testified that Tompkin's circumstances were such that it was difficult for him to get bail; that at his request he spoke to Leet on the subject, and when Sands was informed of his having done so, he appeared to be angry with the witness, and told him he had taken an active part for Tompkins. On the trial in the common pleas, Tuttel testified that when the bond was tendered, he was a freeholder and worth more than double the penalty of the bond. The defendant moved for a nonsuit, insisting that the refusing bail on appeal was a *judicial* and not a *ministerial* act; and the court decided that the defendant was not liable to an action for refusing bail on appeal, even though he acted *maliciously*

Tompkins
v.
Sands.

and directed a nonsuit, upon which judgment was accordingly entered for the defendant. The plaintiff sued out a writ of error.

*A. J. Parker*, for plaintiff error. The acceptance of the *appeal bond* is a *ministerial* and not a *judicial* act; it is as much a ministerial act as is the issuing of process, 7 Cowen, 314, 6 Wendell, 597, and a *justice* who refuses such bond when tendered to him, is equally liable with a *sheriff* who refuses a bail bond. 2 Saund. 59. 1 Dunlap. 155. 15 East, 320. 2 Mod. 31. 7 Johns. R. 138. The allowance of a *habeas corpus* in vacation is a ministerial act, and the officer refusing its allowance is liable to an action. *Yates* v. *Lansing*, 5 Johns. R. 282. But if the acceptance of the appeal bond be considered a *judicial* act, the defendant is responsible, if he acted *maliciously* in refusing to accept, 2 Esp. R. 245; 2 Ld. Raym. 948; 1 East, 563; the plaintiff had given evidence shewing malice, and the question should have been submitted to the jury.

*C. P. Kirkland*, for defendant in error. The justice, before whom the suit of Tompkins against Sands was prosecuted, had no jurisdiction of the subject matter of that suit. In *Main* v. *Prosser*, 1 Johns. Cas. 130, which was an action for a *malicious prosecution* prosecuted in a justice's court, the court decided, that though justices of the peace had jurisdiction of all actions of *trespass on the case*, an *exception* should be *implied* of the action of malicious prosecution from the nature and reason of the thing; they observe, that " the principles of the action for a malicious prosecution involve delicate and important questions, affecting the *administration of public justice*, as well as the rights of individuals; the action must frequently relate to proceedings in another court, and would require the justice incidently to review the conduct of superior tribunals. The exercise of such a power would be inconvenient," &c. See also 12 Johns. R. 466. So, too, in *Wells* v. *Newkirk*, 1 Johns. Cas. 228, it was held that an exception must be implied as to actions *by* and *against executors*, &c. which decision was confirmed in 1 Caines, 191, and 3 id. 129 and in *Crawford* v. *Reid*, 1 Caines, 594, the court decided that the act in relation

to *joint debtors*, where all were not taken on the process, did not apply to justices' courts. The *appeal* having come in the place of a *certiorari*, the common pleas ought for this cause to have reversed the judgment of the justice; and although they may have erred in nonsuiting the plaintiff for the reasons assigned, their judgment must be affirmed.*

The defendant was liable only in case he acted *corruptly,* and *corruption* or *malice* is not alleged in the declaration. 11 Johns. R. 114. 1 East, 563, a. But he acted *judicially*, and therefore is irresponsible; the approval of the surety is a judicial act, although the endorsement of the approval may be ministerial. Jacobs' Law Dict. tit. Justices of the Peace. 8 Johns. 50. 12 id. 356. 8 Cowen, 178.

*J. A. Spencer*, in reply. The act of the justice was ministerial; after judgment, he has no judicial duty to perform; all acts remaining to be performed by him are ministerial. He is bound to make a return on receiving notice of an appeal; this also is a ministerial act, and if he makes a false return, who would doubt his liability? what objection can there be to holding him responsible in a justice's court? For the mere misfeasance or nonfeasance of a ministerial act, the cause may as well be tried in a justice's court as in any other. As to the objection to the declaration, the proceedings in justice's courts, as far as respects regularity and form, are reviewed with great liberality; technical nicety or legal precision in the pleadings is not required. The justice is charged with having *unjustly* and *oppressively* prevented the plaintiff from appealing; these words are equivalent to a charge of *corruption* and *malice*.

*By the Court*, SAVAGE, Ch. J. The question presented in this case is whether a justice, who wilfully and maliciously refuses to approve the surety in an appeal bond, and thereby pre-

* In support of this point, see *Moor* v. *Ames*, 3 Caines, 170, where one justice of the peace was sued before another to recover back a fine imposed by the defendant upon the plaintiff for contempt, and it was held that the merits of the imposition of this fine could not be overhauled before another justice.

vents a defendant from appealing his cause, is liable to an action therefor. The plaintiff in error does not impugn the doctrine of judicial irresponsibility, but relies on the point that the act complained of was not a *judicial*, but a *ministerial* act.

It may sometimes be difficult to determine whether an act is judicial or ministerial. A justice of the peace performs acts of both kinds, and which are clearly distinguishable. He issues process in the first instance, and in doing so, he acts ministerially—his judgment is not at all exercised. When the parties appear before him, and the cause is heard, he renders judgment; he then acts judicially. After judgment, he issues execution; he then again acts ministerially. The justice is both judge and clerk. In *Yates* v. *Lansing*, 5 Johns. R. 282, it was held that an action would not lie against the chancellor for imprisoning one of the officers of his court for malpractice and contempt. Chief Justice Kent, in delivering the opinion of the court, states that the allowance of a writ of habeas corpus in *vacation* is a ministerial act. The statute imposes a penalty on the chancellor and judges for refusing to allow the writ when properly applied for in vacation. Such application may be denied or granted at their discretion in *term*, because there they act judicially; but when they act ministerially, they are liable to the penalty for a refusal—in this instance, it would seem that the same act may at one time be judicial and at another ministerial. In the case of *Hammond* v. *Howell* 2 Mod. 218, the court of oyer and terminer improperly imprisoned a juror, but the court of common pleas held that no action lay against the court of oyer and terminer, for it was a judicial act; that court had power to punish a juror for misconduct, but they were mistaken in deciding what was misconduct or misdemeanor. The recording of force under the statute is a judicial act. 8 Johns. R. 50. A justice of the peace is liable in an action to the injured party, where he acts without jurisdiction. *Case* v. *Shepherd*, 2 Johns. Cas. 27. *Adkins* v. *Brewer*, 3 Cowen, 206. A justice acts ministerially in issuing executions, and if in doing so, he acts irregularly and officiously, he is liable; though if he had committed the irregularity as the agent of the party, and was acting within his

jurisdiction, he would be excused.  *Percival* v. *Jones*, 2 Johns. Cas. 49.   *Taylor* v. *Trask*, 7 Cowen, 249.

There may be cases, I apprehend, when magistrates or others are entrusted with a *discretion*, where it would be difficult to say that they acted either judicially or ministerially.   Such are the acts of the commissioners of excise in the several cities and towns in granting or refusing licences.   Such also are the acts of inspectors of elections; and in both these cases there have been decisions declaring the liability of such officers in case of a wilful, corrupt and malicious exercise of their authority; but if they have acted honestly, though erroneously, no action lies.   In the case of *Rex* v. *Young & Pitts*, 1 Burr. 556, a motion was made for an information against two justices of the peace for arbitrarily, obstinately and unreasonably refusing to grant a licence to one H. D. to keep an inn at Eversley.   In the several discussions upon the motion, Lord Mansfield stated that though this was a matter left to the discretion of the justices, yet if their conduct appeared to be partial, oppressive, corrupt or arbitrary, they might be called, upon to shew the reasons which guided their discretion. " Discretion," he said, " does mean, and can mean nothing else, but exercising the best of their judgment upon the occasion that calls for it; yet if this discretion be wilfully abused, it is criminal, and ought to be under the control of this court." And again : " That this court had no power or claim to review the reasons of the justices of the peace upon which they form their judgments in granting licences, by *way of appeal* from their judgments, or overruling the discretion entrusted to them ; but if it clearly appears that the justices have been partially, maliciously or corruptly influenced in the exercise of this discretion, and have consequently abused the trust reposed in them, they are liable to prosecution by indictment or information; or even possibly by action, if the malice be very gross and injurious."

That a justice will not be punished for an error of judgment, is again reiterated in *Rex* v. *Cox.* 2 Burr. 785. In *Harman* v. *Tappenden and others*, 1 East 556, it was held that without malice no action would lie against the members of a corporation who had excluded a fellow corporator from the

benefits to which he was entitled, the act having been done er-
roneously, but not maliciously. So for refusing the vote of a
person entitled to vote at an election, no action lies unless
malice be shewn, either express or implied. 2 Ld. Raym·
938,958. 1 East, 562. 11 Johns. R. 114, 120. In *Ashley* v,
*White*, it was agreed by three judges that the returning officers
were not judges, but ministerial officers. In *Jenkins* v. *Wal-
dron*, Mr. Justice Spencer admits that an action lies, if the vote
be refused fraudulently or maliciously. He considers the in-
spectors of elections as officers called upon to exercise their
deliberative judgments, and says it would be opposed to all
principle to allow them to be answerable for a mere mistake
in law, when their motives are pure and untainted with fraud
or malice.

In *Smith* v. *Trawl*, 1 Root, 165, an action was held to lie
against a justice of the peace in Connnecticut for granting a
writ of replevin without requiring security. The plaintiff re-
covered in the county court, and the judgment was reversed
in the superior court, on the ground that the law had made
the justice the judge of the sufficiency of the security. The
judgment of the superior court was reversed in the supreme
court of errors, on the ground that the party's bond was no
security, and the act of the justice was compared to a sheriff
letting a man to bail on his own bond. But in *Phelps* v. *Still*,
1 Day, 315, it was held that an action will not lie against a
judge of probate for neglecting to take security from the guar-
dian of a ninfant, although the infant had personal estate, and
the guardian was a bankrupt. The court place his indemnity
from damages upon his judicial character, and that the omis-
sion on his part was by mistake.

On a review of these cases, the principle must be considered
settled, that for a judicial act no action lies, but for an injury
arising from the misfeasance or non-feasance of a ministe-
aial officer, the party has redress in an action on the case;
but in all cases where the defendant is sued for an act in which
he was bound to exercise his discretion, the action will not be
sustained unless it appear that the act complained of was done
wilfully and maliciously. The strongest charge in the declara-
tion in this case is, that the defendant, acting as justice of

the peace, has *unjustly* and *oppressively* prevented the plaintiff from appealing, and thereby reversing a judgment rendered by him, &c. I incline to think this equal to a charge of corruption.

I am of opinion also that a justice, in approving or refusing to approve an appeal bond, does not act judicially; he does indeed exercise his discretion, but it is the same discretion exercised by every ministerial officer who takes bail. The taking security in such cases is rather a ministerial than a judicial act, and if he has acted corruptly an action lies. I am therefore of opinion that the judgment of the court of common pleas ought to be reversed, and that a venire *de novo* should be issued by Delaware common pleas; costs to abide the event.