HENRY W. LIVINGSTON vs. JACOB R. HALLENBECK, Sheriff of Columbia County, and others.

An assessment for the taxation of rents under the act of 1846, may be corrected by affidavit.

That act (1846,) merely adds a new subject for taxation, which is left to be governed by the general law regulating the assessment and collection of taxes, in every respect, except those in which a different mode is prescribed by statute. Reference to the general law, is expressly made in the act, as pointing out the "manner" and "extent" of the assessment.

A person, therefore, entitled to receive rents subjected to such taxation, has a right to avail himself of an affidavit as to the value of his property under the 15th section of Art. 2, Title 2, chap. 13, part 1, of the Revised Statutes.

Where an affidavit (to reduce the amount of the tax) in pursuance of the 15th section above cited, is presented to the assessors, it is their duty to relieve, and correct the assessment in accordance therewith. They should pursue strictly the directions contained in that section.

This court has no power to restrain by injunction the collection of taxes, irregularly or erroneously assessed, under this law. The party has other remedies to redress such grievance. The assessors are personally liable for a faithful and honest discharge of duty. (*Tompkins* v. *Sands*, 8 Wend. 462.)

The assessors have no discretion on their part to reject such an affidavit made under said 15th section, when tendered to them; they are bound to receive it, and to strike out the assessment accordingly.

*It seems* that a neglect to perform such duty would subject them to liability for all the damages in consequence.

If the course pursued by them in making the assessment furnishes evidence of a corrupt motive, or design to tax an individual beyond the provisions of law, or to deprive him of any legal rights and privileges, a proper case is then presented for the jurisdiction of the criminal courts. (*Weaven* v. *Devendorf*, 3 Denio, 117.)

The constitutionality of the act (1846,) discussed, and held to be constitutional—although defective and needing amendment.

This court has no jurisdiction over the question of estimating the value of rents—such as wheat rents, at a certain sum per bushel, &c.—the statute confides that subject to the assessors alone, and their judgment (if honestly exercised) is conclusive.

All leases which originally had more than twenty-one years to run, although they may have, when assessed, but a short term remaining, are taxable, and continue to be taxable until the expiration of their terms. The statute makes it the duty of the assessors "to ascertain the amount of rents reserved in any leases in fee, or for one or more lives, or for a term of years exceeding twenty-one years, &c."

*Argued at General Term, before* HARRIS, WATSON *and* PARKER, *Justices.*—This was a motion to dissolve an injunction. The bill was filed in the late Court of Chancery, to restrain the sheriff of Columbia from proceeding to advertise and sell certain lands of the Plaintiff under warrants issued to him by the county treasurer for the collection of taxes imposed under the act passed May 13, 1846, entitled "an act to equalize taxation." Several irregularities in the assessments were alleged, but the principal one was, that the assessors of the towns of Gallatin, Livingston, and Taghkanic had refused to receive the affidavit of the complainant, and to correct the assessments in accordance with it. It appeared by the affidavits tendered that the Plaintiff was largely indebted. The principal question argued by counsel was, whether under the act above referred to, the person assessed had the right to correct the assessment by his own affidavit, as in other cases of the assessment of personal estate.

The other questions sufficiently appear in the opinion of the court.

H. HOGEBOOM, *for Defendants.*

J. SUTHERLAND, *for Plaintiff.*

PARKER, Justice.—On the argument of the motion to dissolve the injunction in this cause, several important questions were discussed, arising under the act entitled "an act to equalize taxation," passed May 13, 1846. These questions will be of frequent occurrence until a judicial construction shall have been given to that act, and it is therefore desirable that they should be settled, though it may not be strictly necessary to decide them for the purpose of disposing of the motion before us.

The most important of these questions is, whether the person entitled to receive rents subjected to taxation, has a right to avail himself of an affidavit as to the value of his property under the 15th section of art. 2, title

2, chap. 13, part 1, of the Revised Statutes. It is there provided, that if any person whose real or personal estate is liable to taxation, shall, at any time before the assessors shall have completed their assessments, make affidavit that the value of his real estate does not exceed a certain sum, to be specified in such affidavit; or that the value of the personal estate owned by him, after deducting his just debts and his property invested in the stock of incorporated companies, liable to taxation on their capital, does not exceed a certain sum to be specified in the affidavit, it shall be the duty of the assessors to value such real or personal estate, or both, as the case may be, at the sums specified in such affidavit, and no more. This provision, it will be seen, extends to every description of property, both real and personal, and is still in full force, no exception having been made to it by any subsequent legislation.

By the act of 1846, a species of property, previously omitted, was subjected to taxation. Before that time, rents due were, I think, properly taxable as personal property. They were clearly within the description of personal property as defined in 3d section of the first title of the chapter above cited. But by the act of 1846, rents not due but reserved on certain leases were declared taxable at a principal sum, the interest of which at the legal rate, would produce a sum equal to such rents. This species of property was called at common law an "incorporeal hereditament," and came under the denomination of "real property." (2 Black. Com. 41.) But the act of 1846 declares that such "rents shall be assessed to the person or persons entitled to receive the same as personal estate, which it is hereby declared to be for the purpose of taxation under this act." The meaning of which expression clearly is, that for the purpose of carrying into effect that act, and subjecting it to taxation, it should be assessed as, and was declared to be, personal estate ; and the reason for this expression as plainly is, that, when not otherwise specially provided by the act of 1846, the forms and mode of assessing and collecting taxes on other personal property might be adopted.

What other reason could there have been for declaring it personal estate ? The tax is to be assessed in the town where the lands lie. In this respect it is like a tax on real estate, and not like that on personal estate, which follows the residence of the person whose property is assessed. The second section of the act of 1846 requires the supervisors to assess such taxes *in the same manner and to the same extent* as any personal estate of the inhabitants of such town. Beyond that extent, they have no power to go.

I regard the act of 1846, as merely adding a new subject for taxation,

which is left to be governed by the general law regulating the assessment and collection of taxes in every respect, except those in which a different mode is prescribed by statute. Indeed, reference to the general law is expressly made in the act of 1846, as pointing out the "manner" and "extent" of the assessment.

The general law is unrepealed, and that and the act of 1846 must be construed together, and full effect must be given to both.

Such also seems to have been the view entertained in the Senate of this State when this act was under discussion there, as appears by Senate Document, No. 135, of 1846. That is a report from the finance committee to which the bill was referred, in which it was conceded that the usual affidavit to reduce the amount of the tax might be made as in other personal assessments, and one of the grounds of objection made to the passage of the bill was, that there would be cases in which such affidavit would not afford adequate relief.

It is true, cases may occur in which the form of the affidavit prescribed by the statute would not relieve the person assessed. Suppose him to be worth $100,000 of personal estate, irrespective of his interest in leasehold estates, situated in three towns, and those interests are assessed in each of those towns at $50,000. That would make $250,000 of personal property. For $100,000 of this he is assessed in the town of his residence. His debts amount to $100,000. His affidavit must be in the language of the statute that, the value of the personal estate owned by him, after deducting his just debts, does not exceed $150,000; yet such an affidavit will afford him no relief, either in the town of his residence, or in either of the three towns where his rents are assessed, for in neither of those is he assessed as high as $150,000, and he must submit to the injustice of paying a tax on $250,000 of personal estate, when he is in fact worth but $150,000.

This illustration shows that the act is defective and needs amendment. Though cases of this description may be of rare occurrence, yet the form of the affidavit should be altered, so as to afford equal protection to all. This defect authorizes no inference against the applicability to an assessment for rents of the 15th section above cited; it only shows that it may happen in some instances that the law is inadequate to protect against an unjust assessment.

I have shown that it is the settled policy of the law that all valuation assessments might be corrected by the affidavit of the person assessed. Such a provision is necessary to the protection of the rights of the citizen against mistake or abuse. The deduction of the debts of the person as-

sessed is perhaps of minor importance, but as a means of keeping the assessment of rents within its proper limits, the right to make the affidavit of value is indispensable to a just administration of the law. Indeed there is no other remedy—no other means are provided for redress. The assessment presents only the aggregate sums: and if, by mistake or otherwise, the landlord were assessed to the extent of four times his actual interest in the lands, without the right to correct such assessment by his oath, he would be remediless. Either of the affidavits required by the 15th section above cited, would be sufficient to correct an error in the valuation of rents, but the legislature having chosen to declare such property *personal estate*, have, by so doing, directed which affidavit is to be adopted.

It could not have been intended by the legislature that the valuation of one species of property should be placed entirely beyond the reach of correction, while that of all other property, both real and personal, is controlled by the affidavit of the person whose property is assessed. If so, it ought not certainly to be called an "act to equalize taxation." Such legislation would be a departure from a well-established system, dangerous as a precedent and partial and oppressive in its operation. Some of those who have sought the repeal of the act of 1846, have attempted to give to it the construction now contended for by the Defendants, for the purpose of attaching to it an odious character, with which I think it is not justly chargeable. (Senate Doc. for 1847, No. 47.) Indeed it has been argued, in one instance at least, before us, that the law could not be sustained and enforced, and that it ought to be held void by the courts, because no provision was specially made in it to correct an unjust assessment. The construction that I put on the act relieves us from the necessity of examining into the soundness of such an argument.

I think, therefore, the assessors of the towns of Gallatin, Livingston, and Taghkanic erred in not correcting the assessments in accordance with the affidavits presented. They ought to have pursued strictly the directions contained in the 15th section above cited, and relieved the Plaintiff from the assessments.

It is also claimed on the part of the Plaintiff, that in ascertaining the value of the annual wheat rents, the assessors committed an error to his prejudice, by estimating wheat at $1.25 per bushel when it was in fact worth but $1.00 per bushel. Conceding that the estimate in this respect was wrong, I do not see that this court has any jurisdiction to review it. The statute confides that subject to the assessors alone, and if that judgment be honestly exercised, it is conclusive upon all interested, except so

far as the affidavit made under the said 15th section may serve to correct it; and even if illegal items were included in the estimate, as is also alleged by Plaintiff, although it might, under some circumstances, make the assessors personally liable, it would not vitiate the assessment. (*People* v. *Supervisors of Alleghany*, 15 Wend. 198.) In estimating the value, the assessors acted judicially. (*Weaver* v. *Devendorf*, 3 Denio, 117.

It is stated in the bill of complaint, that many of the leases of which the rents are taxed, though originally given for a term exceeding twenty-one years, had but a few years more to run at the time of the assessment; and it is contended that they were not therefore subject to taxation. The statute makes it the duty of the assessors " to ascertain the amount of rents reserved in any leases in fee, or for one or more lives, or for a term of years exceeding twenty-one years." It seems to me plain that this language includes all leases which originally had more than twenty-one years to run. It is not the unexpired term that determines the class to which the lease belongs; that can only be ascertained by the language of the lease itself. It would not surely be contended that a lease for lives, originally subject to taxation, became exempt, when but a short term of life remained. If rents were reserved in a lease for a term exceeding twenty-one years I have no doubt they continue to be taxable till the expiration of the term.

The Plaintiff cannot avail himself of the agreement between himself and his tenants that a new lease should be executed for the unexpired term. Though that unexpired term be less than twenty-one years, the rents would still be liable to taxation. The assessors look only at the lease existing at the time of the assessment, and not at the agreement to substitute a new one.

With the new construction I have given the act I do not see upon what ground the law of 1846 can be held to be unconstitutional. It operates upon an actual tangible capital. The interest of the landlord possesses definite and appreciable value—as much so as a mortgage, which in some respects it resembles, or an annuity. The law subjects this, like all other property, to taxation, and such act is a legitimate exercise of the sovereign power. (*Thomas* v. *Leland*, 24 Wend. 65.) Even if it should be considered that this same property was before taxed, that would not render the law invalid. It would only operate as a double taxation, which, in some cases, previously existed, as where a mortgage on land was the only security.

It is not a law impairing the obligation of contracts. It in no way interferes with the contract between the landlord and his tenant—but it

leaves the obligation to pay the taxes, if there be any, in full force, according to the contract between them. It only collects, for the use of the public, something out of property or the owner of property, in return for the protection afforded by the government.

I think there was the constitutional right to pass the law; whether that power was discreetly exercised, is not a question for the decision of the courts.

The law, then, being constitutional, but the powers under it being in some respects irregularly or erroneously exercised, it remains to be considered whether the authority of this court can be exerted to restrain by injunction the collection of the taxes in question.

If the proceedings are void, the law affords an adequate remedy without a resort to a bill in equity. In such case, the sale of the wood lots in question would not divest the title of the Plaintiff, but he would have a perfect defence at law against an action to recover from him the possession. (*Van Doren* v. *The Mayor of New York*, 9 Paige, 388; *Mooers* v. *Smedley*, 6 John. Ch. Rep., 28; 4 do., 352; *Mayor of Brooklyn*, v. *Meserole*, 26 Wend., 132; 1 Paige, 114; *Atkins* v. *Brewer*, 5 Cow., 206; *Horton* v. *Auchmoody*, 7 Wend., 200; *Parker* v. *Walrod*, 16 Wend., 574.)

If the proceedings are merely erroneous and not void, I know of no equitable power existing in this court to review them and correct the error. The Plaintiff has other remedies to redress such grievance. The assessors are personally liable for a faithful and honest discharge of duty. (*Tompkins* v. *Sands*, 8 Wend., 462.) If the affidavit was offered to be made or was tendered to them in the form prescribed by law, there was no discretion on their part to reject it. They were bound to receive it and to strike out the assessment; and I do not see how a neglect of this plain duty could fail to subject them to liability for all the damages sustained in consequence. If the course pursued by them in making the assessment furnishes evidence of a corrupt motive, or a design to tax the Plaintiff beyond the provisions of law, or to deprive him of any legal rights and privileges, a proper case is then presented for the jurisdiction of the criminal courts. (*Weaver* v. *Devendorf*, 3 Denio, 117.)

But conceding, even, that this is a proper case for equitable relief in this court, I do not think it is one in which an injunction can be sustained. The filing of a notice of *lis pendens* would protect the Plaintiff against any claim to the woodland that might be made under the sheriff's sale. (*Osborne* v. *Taylor*, 5 Paige, 515.) See also the opinion in *Van Rensselaer* v. *Kidd*, decided at the present term of this court.

The injunction must therefore be dissolved, with $15 costs.

Mr. Justice Watson concurred in the above opinion. Mr. Justice Harris concurred in the result, without expressing any opinion upon the question whether an assessment for rents may be corrected by affidavit.