THE PEOPLE, and FLAGG, *vs.* LOWBER, and the MAYOR &c. OF NEW YORK.

Even if it be conceded that the attorney general may maintain an action, in the name of the people, to restrain a municipal corporation, it can only be to restrain them from making a fraudulent or illegal disposition of the corporate property.

Where such fraud is the foundation of the action, it must be distinctly charged in the complaint.

The resolution passed by the common council of New York in January and February, 1857, authorizing the comptroller to purchase certain land of

Robert W. Lowber, for the purpose of a market, was within their powers, as conferred by the city charter. And in passing such resolution the common council did not violate any of the restrictions contained in the charters of the city.

The common council of New York may order land to be purchased, for a market, notwithstanding the limitation in the charter as to the yearly value of land which the corporation may hold.

MOTION to dismiss the complaint, on answers denying the material allegations therein.

*William Curtis Noyes, R. Busteed, John M. Barbour* and *E. P. Cowles,* for the motion.

*James R. Whiting,* opposed.

INGRAHAM, J. This action is brought in the name of the People and A. C. Flagg, as comptroller of the city, and a corporator and tax-payer, on his own behalf, and on behalf of all other corporators and tax-payers, against the defendants, to obtain an injunction staying the proceedings upon a judgment, and praying that the judgment recovered by the defendant Lowber may be set aside, and that the defendants, the mayor, aldermen and commonalty of the city of New York, may be enjoined from completing the purchase of certain land, from Lowber, for a market purpose, and to declare such contract void. The common council, by resolution, directed such purchase to be made, in January, 1857, by the board of aldermen, and in February, 1857, by the board of councilmen, and which resolution became a law at the expiration of ten days, by the omission of the mayor either to sign or return the same with his objections thereto. The defendant Lowber thereupon prepared a deed, and submitted the same to the counsel of the corporation, who approved thereof, and of the title to the property therein described. The deed was tendered to the mayor and comptroller, who refused to accept the same or complete the purchase. Subsequently Lowber brought an action against the mayor &c., and recovered against them the amount

of the consideration money of the said premises so agreed to be sold, and has issued an execution therefor. The cause was brought on upon the pleadings, and a motion was made to dismiss the complaint for the reasons hereafter stated.

, The complaint alleges various reasons: such as want of power to make the purchase; the improper mode of making it—by the resolution, and not by the comptroller; that the purchase was illegal; that the price paid for the land exceeded its value; that the property was encumbered by mortgage; and that, in passing the resolution for the purchase, the common council was guilty of an abuse of trust and usurpation in office. The defendants, Lowber, and the mayor, aldermen, &c. have filed their answers denying the allegations upon which the plaintiffs' action is founded. This action was brought in pursuance of an order made by this court at general term, in the action of Lowber against the mayor &c., on the motion to modify the order staying proceedings, in which an action was required to be commenced in the name of the comptroller, or some other tax-payer; and security was to be given for damages arising from the injunction. Since that order was made, the general term of this district has decided that no tax-payer could maintain such an action. This decision would control me as to the maintenance of this action in the name of a taxpayer, whatever might be my opinion upon the question then submitted to the general term: and so far as it is sought to maintain this action in the name of the comptroller, as a taxpayer, under that decision, I would be bound to dismiss the complaint.

The people of this state are also joined as plaintiffs; and the question is thus presented whether they can maintain an action against a municipal corporation for any alleged fraud in making a contract, or to prevent the exercise of powers not possessed by them under their charter. Proceedings by way of information have often been brought in England and this country against corporations, and are common in the books. Those proceedings have repeatedly been sustained to

restrain such corporations from doing acts in violation of their charters, or from exercising powers not possessed by them. In *The Attorney General* v. *The Birmingham and Oxford Rail Road Co.*, (8 *Law and Eq. Rep.* 243,) the lord chancellor says: "The attorney general has not the power to restrain public companies from doing an act which they are authorized to do, where it interferes with the rights of the public; but it is a different thing to say, where a work is authorized to be done, that he may restrain the doing of the work, until the company shall perform other work." Again: "Where acts are being done injurious to the public interests, inasmuch as the public interests might otherwise be neglected, the attorney general has in such a case authority to represent the public." In the *Attorney General* v. *Wilson*, (9 *Sim.* 30; 1 *Jur.* 800,) it is said, "The court has jurisdiction to relieve against collusive alienation of corporate property." The cases cited in the *Attorney General* v. *Utica Ins. Co.* (2 *John. Ch.* 370,) seem to hold a contrary opinion, or at least to leave the question in much doubt. By the 428th section of the code, proceedings by information are abolished, and an action is substituted for it, and the enumeration in sections 429 and 430, specifying in what cases the attorney general may bring an action in the name of the people, adds to the difficulty. It must be observed, however, that all these were cases brought in the name of the attorney general, and not in the name of the people of the state. How far any action may be maintained in the name of the people for such a cause, may well be doubted. I do not, however, consider it necessary for the disposition of this case, to decide that question now. Even conceding that the action may be maintained in the name of the people to restrain municipal corporations in certain cases, I have no hesitation in adopting the conclusion that those proceedings cannot be carried to the extent to which it is sought to use them in this action. If the action can be maintained at all, it can only be to prevent the commission of fraudulent acts in regard to corporate property, and the doing of acts not authorized by their charter.

However unwise, improvident, extravagant, or unnecessary a purchase a municipal corporation may intend to make, neither the attorney general nor any tax-payer has, in my judgment, any right to interfere by action and by injunction. The common council have the power, under their charter, to provide for and regulate markets. They have the sole right to establish public markets. It is a franchise which is conferred upon them by the supreme authority, and with it is conferred all necessary power to carry into effect the exercise of that right. It would have been an idle grant to the city authorities to confer on them the franchise of establishing and regulating the public markets, and at the same time withhold the power to procure the place where such market should be built. It would be an idle grant to bestow upon them the right of collecting the fees of the markets which they should thus establish, and yet prohibit them from purchasing the place necessary for earning such fees. I think there can be no doubt that the principle is a correct one, that the grant of the franchise relative to markets, in the city charters, necessarily carries with it the right to purchase the land on which such market is to be established. But it was said, even if so, the power is controlled by the limitation of the corporation as to the real estate which it may hold, in the provision allowing the purchase of lands, not exceeding in the whole the clear yearly value or rent of £3000. It may well be questioned whether, under the various acts of the legislature, any force remains in this limitation. The legislature having repeatedly provided by law for the purchase of lands which far exceed in value and rent the amount to which the corporation was originally limited, have virtually annulled this provision, and rendered it nugatory. The income from property thus authorized to be purchased, far exceeds in value the limited amount, exclusive of the increase which has taken place in the property purchased originally within that limitation. But if there be any virtue remaining in the restriction, there are several reasons why it does not apply to the purchase in this case. One reason is that

before stated, that the right to establish a market or markets at such places as shall from time to time be ordered, established, and erected, by the common council of the city, (*Kent's Charter, p.* 59,) necessarily conferred the power to hold the land on which such market was to be erected. No revenue is to be derived from the lands purchased for a market, if so used, except for market purposes. These fees the city is authorized to receive. Such revenue, therefore, cannot be considered as coming within the limit before referred to. The grant of power to establish as many markets as the common council should think fit, thereupon clearly shows that in bestowing such a power the legislature contemplated that the increase of the city would require from time to time an increase of markets for the use of the inhabitants. Under such circumstances it would be unreasonable to say that the legislature, at the same time when providing for the necessities of the inhabitants of the city, in giving them the markets needed by them, should have, by a limitation as to the value of the land to be purchased by the corporation, deprived them of the means of carrying into effect these provisions.

These views are fully sustained by the case of *Ketchum* v. *The City of Buffalo*, (21 *Barb.* 294.) The court says, " The power to establish a market being granted, all the powers necessary for the exercise of this power are implied. The power expressly granted, or right expressly given, could not be carried into effect or exercised without land, and therefore the common council had the power to purchase, take and hold the land necessary for the establishment of a market;" although in that case other provisions of the charter authorized the purchase of the land, still, that does not weaken the force of the argument on that point. The two provisions of the charter must be so construed as to give effect to both; and, while this limitation is to be applied to the purchase of land by the city for other purposes, (if it now has any force whatever) it does not destroy or control the right previously conferred, to erect and establish markets, and, as a necessary consequence,

The People *v.* Lowber.

to purchase lands therefor, as the corporation should deem proper.

These views dispose of the objection that the common council, in buying this land, did an act not authorized by the charter, and exceeded the limitation in the charter as to the amount of real estate they were authorized to hold.

It is also urged, in favor of maintaining this action, that by the charter, no executive business should be performed by the common council, but that the executive power of the corporation should be vested in the heads of the departments. Without stopping to examine the question, whether the purchase of land by an ordinance or resolution, is an executive act within the meaning of the charter, of which I entertain great doubt, there is clearly, in the resolutions passed by the common council for the purchase of this land, no violation of that section (Sec. 9, Amended Charter.) The resolution authorizing the purchase, directs the comptroller to make the purchase for the use of a market, limiting him as to price, and defining the dimensions of the land to be purchased. The comptroller had previously advertised for and received proposals for the sale of the land in that neighborhood, and had submitted such proposals to the common council. The selection from those offers, of the land best suited for the purposes contemplated, and the limitation of the price, was a legislative and not an executive act, within the province of the common council, and was properly exercised by them. The duty that was executive was making the contract, receiving the deed, and making the payment. This duty was by the resolution confided to the comptroller; and, so far as any thing appears before me, I see no executive act performed, or attempted to be performed, by the common council in this matter. I do not understand this section as taking from the common council the right to control by legislation the discretion of the officer, in selecting themselves the site, and fixing the price at which the purchase is to be made; but, after these things are settled by an act of legislation, they cannot either by a committee or otherwise, do any thing

to carry into effect that legislation. Such powers must be exercised by the head of the department. The want of an appropriation out of which this money was to be paid, is not a ground for maintaining this action. It might have been different in the action brought by the defendant against the corporation to recover for the land so to be sold; or, if a mandamus had been moved for, it might have been an answer to such an application, but it affords no ground to the attorney general to proceed against the defendants to restrain them in the manner asked for in the complaint.

These are all the grounds on which the plaintiffs' counsel seek to restrain the defendants, except the alleged fraud on the part of the corporate authorities. If any such fraud is charged, equity can give relief on a proper application. The corporation might undoubtedly apply, and where the common council is so frequently changed in its members, the fair supposition is, that a successive body would require such a proceeding to be commenced, if they believed fraud had existed. There is still time for the present common council to institute proceedings if any fraud has been discovered. In the absence of proceedings on their part, I have, for the purposes of this action, conceded that the attorney general might commence the action. It is, therefore, unnecessary to examine the complaint, to ascertain whether any such fraud is charged in the transaction as would vitiate the proceeding.

Where the whole foundation of the action rests upon fraud, such fraud should be charged as the ground of the action. If, without such allegation, the people, by the attorney general, have no right to interfere, then it should be shown by the complaint that the parties had been guilty of acts of fraud, which would authorize the court to restrain the collection of a judgment that appears to be regular. The complaint shows the above proceedings by the common council, in authorizing originally the purchase by the comptroller; the presentment of the deed by Lowber and demand of the purchase money; the action brought by Lowber and recovery of judgment thereon; that

The People *v.* Lowber.

such action was referred by consent of parties; that an execution was issued thereon; that the price to be paid therefor was double the value of the property; that the title was defective; that the counsel to the corporation reported the title to be good; that the land was encumbered by a mortgage; that the counsel to the corporation refused to take any measures for the relief of the corporation; that an application was made to the corporation, and they passed resolutions upon the subject, which the complaint avers to have been passed by them regardless of their duty; that the mayor suffered the resolutions to become law, without signing or vetoing the same, surreptitiously; that the action was referred by the counsel, and judgment suffered through neglect; that the comptroller applied to the court to have the judgment opened, which was opposed by the counsel of the corporation, and Lowber, on the ground that the comptroller had no right to interfere, or to be heard on such motion; and that an order was made by the general term, providing for bringing this action and for giving security thereon.

It appears to me that these facts as stated in the complaint do not show such a state of things as will warrant the court in charging fraud upon the common council. No fraud is averred. They are charged with neglect of duty in refusing to apply to set aside the judgment and with proceeding in violation of the provisions of the charter, but no fraud is charged against them, and under this complaint no fraud could be proven by which the plaintiffs could succeed.

I do not consider that the discretion of the common council in legislation can be controlled by the courts. If they have authority to legislate, their discretion as to what should be passed or rejected is a matter exclusively for themselves. They may pass improvident laws, they may make improvident purchases, they may pay for land prices which some would think exorbitant, but neither the attorney general nor a tax-payer has a right to call them before the courts to show that their legislation was indiscreet, that the prices paid by them did

not exceed the actual value, or that it was wise to pass the ordinances or resolutions they may adopt.

Nor are the acts of the counsel any ground for maintaining this action. It was his duty to examine the title and comply with the directions of the common council, so far as those directions did not conflict with the law. His consent to refer the cause of Lowber against the corporation, even if ill-advised, was not illegal, but was expressly authorized by the code, which provides for the reference of all causes by consent. His objections to the motion in the supreme court to open that judgment were made in pursuance of a resolution passed by the common council after full knowledge of the transaction in regard to the recovery of the judgment, and of a resolution directing him to take measures to enforce payment of said judgment, which were passed by the common council and approved by the mayor in August, 1857. This deliberate action of a subsequent common council, without any charge of fraud on their part, must be treated as a ratification of the action of the previous common council in authorizing the purchase, and the counsel to the corporation would have departed from the line of his duty if he had, for any supposed want of discretion on the part of the common council in passing the resolution of purchase, or improvidence in making the contract, attempted to disobey such resolutions. The heads of departments do not hold their places independent of the legislation of the common council, and where such legislation is not in violation of law they have no right or power to refuse obedience to such legislation because they may deem it unwise or improvident. On the contrary, they are only in the legitimate discharge of their duties when they comply with the legislative directions of the common council, not passed in violation of law. There is no difficulty on the part of the common council in instituting this action in the name of the corporation, if they believe the contract to have been made fraudulently or illegally; and when two successive common councils have refused to make any attempt to set aside the contract, and have expressly di-

rected the counsel to take measures to compel the payment of the money, the acts of the counsel in carrying out those resolutions cannot be condemned.

My conclusions are, that if it be conceded that the attorney general may bring an action in the name of the people to restrain a municipal corporation, it can only be to restrain them from making a fraudulent or illegal disposition of the corporate property.

That such fraud must be distinctly charged in the complaint, where it is the foundation of the action.

That no fraud is charged in the complaint in this action upon which the same can be sustained.

That the resolution passed by the common council authorizing the comptroller to make the purchase of the land in question was within their powers as conferred by the charter.

That the common council may order land to be purchased for a market, notwithstanding the limitation in the charter as to the yearly value of land which they may hold.

And that in passing such resolution, they did not violate any of the restrictions contained in the charters of the city.

The motion to dismiss the complaint is therefore granted.

[NEW YORK SPECIAL TERM, September 11, 1858.   *Ingraham*, Justice.]

