## COLLENDER v. REARDON.

(Supreme Court, Appellate Division, First Department. June 3, 1910.)

1. HAWKERS AND PEDDLERS (§ 3*)—WHO ARE HAWKERS AND PEDDLERS— "HAWKER"—"PEDDLER."

The primary idea of a "hawker and peddler" is that of an itinerant trader, who carries goods about and actually sells them, in contradistinction to a "trader," who sells goods at a fixed place of business.

[Ed. Note.—For other cases, see Hawkers and Peddlers, Cent. Dig. §§ 3–6; Dec. Dig. § 3.*

For other definitions, see Words and Phrases, vol. 4, pp. 3220–3223; vol. 6, pp. 5260–5267; vol. 8, p. 7750.]

2. EVIDENCE (§ 32*)—ORDINANCES—JUDICIAL NOTICE ON APPEAL.

The Appellate Division will not judicially notice an ordinance not introduced as evidence below in the trial of a case in the City Court.

[Ed. Note.—For other cases, see Evidence, Dec. Dig. § 32;* Appeal and Error, Cent. Dig. § 2959.]

3. MUNICIPAL CORPORATIONS (§ 106*)—COLLISION IN STREET—INJURY TO PUSH-CART PEDDLER—CONTRIBUTORY NEGLIGENCE AS MATTER OF LAW.

As under the common law and by statutory recognition, there has been a well-recognized use of highways and streets by hawkers and peddlers carrying their wares on their persons or otherwise, the presence in a street of a push-cart peddler, who was injured in a collision, was not contributory negligence per se precluding a recovery of damages.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 706;* Highways, Cent. Dig. § 473.]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

4. MUNICIPAL CORPORATIONS (§ 706*)—COLLISION IN STREET—ACTION FOR IN-
JURY—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

In an action for injuries caused by a collision in a street, plaintiff's
contributory negligence *held* to be a question for the jury under the evi-
dence.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. §
706;* Highways, Cent. Dig. § 473.]

Appeal from Appellate Term.

Action by Solomon Collender against James Reardon. A judg-
ment for defendant was affirmed by the Appellate Term (121 N. Y.
Supp. 531), and plaintiff appeals by permission. Reversed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT,
CLARKE, and DOWLING, JJ.

Abraham Oberstein (M. S. Bevins, of counsel), for appellant.
Frank V. Johnson (Harry S. Austin, on the brief), for respondent.

CLARKE, J. Plaintiff was a push-cart peddler and was knocked
down and injured by a team of horses attached to a wagon driven
by an employé of the defendant. The plaintiff gave evidence tending
to establish that at the time of the accident he was standing between
the handles of his push cart, was close to the curb on Bayard street
near Chrystie street, securing his goods for the night, when he was
struck. He had not been engaged in vending at that place, his usual
place for doing business being on Forsyth street, but was on his way
home when he stopped to fix up his goods. Evidence given by the de-
fendant tended to show that plaintiff was proceeding along the street at
the time of the accident and turned his push cart into the defendant's
vehicle. There was thus presented a question of fact as to how the
accident occurred, as well as upon the negligence of the defendant and
the contributory negligence of the plaintiff. No order was entered
upon the motion denying a new trial, and there are, therefore, pre-
sented for review questions of law only.

The learned court charged the jury, inter alia, as follows:

"A plaintiff cannot expect to have his case treated more favorably than he
himself testified to, and his story, as I understand it (and if I am wrong I
want to be corrected, because, understand, so far as the facts are concerned
you are the sole judges, and you are not bound by the statement of the court
or of the lawyers on the facts), is that he was standing with his push cart for
10 or 12 minutes, according to his own statement, on the south side of Bayard
street, between Chrystie and the Bowery, either selling goods, or arranging
his goods so as to go in for the night. He claims he stood there for 10 or 12
minutes up against the curb; that he looked up and saw the defendant's
truck 100 feet or so away; that he looked back again, and before he could
get out of the way this truck was on top of him and he was struck. As I
understand this testimony, that is substantially what he claims. So much for
the negligence of the driver of the defendant, if you so find. Now, we get to
the question of contributory negligence of the plaintiff, because, as I told you,
he cannot recover in this case, no matter how negligent the driver may have
been, if he himself is guilty of contributory negligence. In this case I am ob-
bliged to call your attention to a recent decision of the Supreme Court, Ap-
pellate Division, Second Department, the case of Tolkon against Reimer Com-
pany, reported in 125 App. Div. 695 [110 N. Y. Supp. 129], and this, as I un-
derstand, is the most recent expression of the appellate courts on this subject.
If I am wrong in that, I want to be corrected. This was a case where a col-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep't Indexes.

lision took place between a wagon and a push-cart vendor. He was in the street vending his wares, and the court held as follows: 'The plaintiff was obstructing the street for the purpose of vending his wares. It cannot be doubted that this was unlawful encroachment upon the street, for it was not in any sense a legitimate street use. Section 50 of the City Charter (Laws 1901, c. 466) provides, among other things, that "the board of aldermen shall not have power to authorize the placing or continuing of any encroachment or obstruction upon any street or sidewalk, except the temporary occupation thereof during the erection or repairing of a building on a lot opposite the same." His unlawful occupation of the street contributed to his accident, unless the defendant's driver willfully or wantonly ran into him.' Under this decision, I charge you as a matter of law that if this plaintiff was standing, as he testified, for 10 or 12 minutes with his push cart up against the curb, either for the purpose of selling goods or for the purpose of closing for the night, when this accident took place, he contributed as a matter of law to the accident, unless the defendant's driver ran willfully or wantonly into him. That is the law."

Plaintiff's counsel:

"I take an exception to your honor's charge wherein your honor says in substance that the jury may hold the plaintiff guilty of contributory negligence as a matter of law unless they find that the driver willfully or wantonly ran into the plaintiff's push cart."

He also excepted to that portion of the charge that plaintiff cannot expect to have his case treated more favorably than he himself testified to, and also to that portion where the court read from the reported case.

After the jury retired, upon their request, the judge's charge was twice read to them at intervals by the stenographer. They finally returned a verdict for the defendant. It is clear that, if the learned court fell into error in his charge upon the subject of contributory negligence, the judgment must be set aside.

In Commonwealth v. Ober, 12 Cush. (Mass.) 493, it is said:

"The primary idea of a 'hawker and peddler' is that of an itinerant or traveling trader who carries goods about in order to sell them, and who actually sells them to purchasers, in contradistinction to a 'trader,' who has goods for sale and sells them in a fixed place of business."

In 21 Cyc. 367, it is said:

"In the absence of a definition by statute or municipal ordinance, a 'peddler or hawker,' within the generally accepted meaning of the words, is a small retail dealer who carries his merchandise with him, traveling from place to place, or from house to house, exposing his or his principal's goods for sale and selling them."

Chief Justice Titus, writing for the General Term of Buffalo Superior Court, in City of Buffalo v. Schleifer, 2 Misc. Rep. 216, 21 N. Y. Supp. 913, said:

"The power to license hawkers and peddlers existed at common law, and has been exercised from time immemorial in this state, either under the common law, or by virtue of an act of the Legislature. This power has been delegated by the Legislature to the municipalities of the state, and within the limits of the various cities that power is now exercised by the city authorities. * * * The street is a public highway intended for and devoted to the transport of goods and passengers from place to place, and not a public mart where goods may be exposed for sale without regulation or restriction by the public authorities, and when they have in the language of one of the cases above cited only imposed a restraint as to time and place in which huck-

sters and peddlers may ply their vocation, it does seem to us to be neither unreasonable nor in restraint of trade, or in violation of any right or privilege which the citizen has in the public highway."

Gray, J., in Village of Stamford v. Fisher, 140 N. Y., at page 190, 35 N. E. 501, said:

"It is perfectly competent to empower municipal corporations to prescribe regulations for the orderly conduct of the business within their limits and upon the public streets, and to provide that the itinerant peddler, or hawker, should contribute to the revenues of the municipality by the payment of a license fee, in the nature of a tax upon his business, in return for the privilege and protection accorded to him in so carrying on his trade. * . * * The dominant idea involved in such an occupation seems to be that the individual carries his stock in trade, consisting in small wares, on foot, or in a vehicle, about the country, offering them for sale and then and there selling them. The statute in coupling the terms 'hawking' and 'peddling,' itself suggests the idea that the features of itinerancy and the public offering of goods for sale are present in the occupations of the hawker and the peddler. Either one avails himself of the highway for the conduct of his trade in about the same manner."

Title 4 of chapter 17 of part 1 of the Revised Statutes of 1827–28 (1 Rev. St. p. 575), is entitled, "Of Hawkers and Peddlers," and provides provisions regulating persons engaged in such business and the issuance of licenses therefor. Article 4 of the general business law (chapter 25 of the Laws of 1909; Consol. Laws, c. 20) is an article concerning peddlers, and section 35 thereof provides:

"This article shall not affect the application of any ordinance, by-law or regulation of a municipal corporation relating to hawkers and peddlers, within the limits of such corporation, except as otherwise provided in section 32 hereof; but the provisions of this article are to be complied with in addition to the requirements of any such ordinance, by-law or regulation."

And article 10 of the town law, being chapter 63 of the Laws of 1909, provides, in section 212 (Consol. Laws, c. 62):

"Every person hawking or peddling goods or produce in the public streets or places, or vending the same, by calls from house to house in any town, the town board of which requires a license for the pursuit of such calling, without having obtained such license, * * * shall be liable to a penalty" —with other regulations in regard thereto.

The consolidation act (chapter 410 of the Laws of 1882), in section 86, conferred power upon the common council to make ordinances:

"(1) To regulate traffic and sales in the streets, highways, roads and public places; * * * (20) in relation to the licensing and business of * * * hawkers, peddlers, vendors. * * *"

And the Greater New York Charter (chapter 466 of the Laws of 1901), in section 51, provides that:

"The board of aldermen shall have power to provide for the licensing and otherwise regulating the business of * * * hawkers, peddlers, vendors. * * *"

So that it appears that under the common law and by statutory recognition there has been a well-recognized use of the public highways and city streets by itinerant vendors, hawkers, and peddlers carrying their wares, either upon their persons or upon push carts or vehicles drawn by animals; that this common and well-recognized use of the streets for such a purpose has been regulated by statute and by ordi-

nances authorized to be passed by municipal authorities and licenses required therefor.

It appeared in the evidence in this case that the plaintiff had a license and a badge. It was not produced, and the terms thereof do not appear. We know that well-considered ordinances have been passed upon the subject by the board of aldermen; but we do not take judicial cognizance of them for the purpose of affecting the result of this suit, because they were not offered in evidence. We have made this somewhat elaborate reference to the statutes and the cases in this state, and they might be quoted from every state in the Union, for the purpose of demonstrating that the plaintiff was lawfully upon the street, using it for a recognized street purpose, controlled and regulated by law and licensed so to do, and that the mere fact of his being in the street under such circumstances could not be held as matter of law contributory negligence upon his part which precluded recovery for damages for an injury caused by being negligently run down by the driver of a vehicle.

In the case from which the quotation was read to the jury (Tolkon v. Reimer, 125 App. Div. 695, 110 N. Y. Supp. 129) the motion to dismiss, as appears by the record, was in these words:

"Defendant's Counsel: I move to dismiss the complaint on the ground that they have failed to show that degree of care on the part of the person working in the street that the law required in avoiding teams passing to and fro upon the street. And I rely upon the decision of Lyons v. Avis, 5 App. Div. 193, 38 N. Y. Supp. 1104. The plaintiff by his own testimony has shown that he did not use any care whatever, that he made no effort of any kind to avoid teams upon the street, but stood there disregarding the fact that teams were going to and fro upon the street. And I therefore ask for a dismissal of the complaint on that point, and on the ground of the failure of the plaintiff to show his freedom from contributory negligence. The Court: I grant the motion."

It will be seen that no such question as is here presented was before the trial court. The motion was made and granted upon the ground that upon the facts the plaintiff had failed to show any care whatever, not that he was guilty of contributory negligence as matter of law because he was a push-cart peddler. In the Appellate Division the majority opinion said:

"The plaintiff was obstructing the street for the purpose of vending his wares. * * * Although unlawfully obstructing the street, the plaintiff admits that he did not exercise the slightest care to avoid being hit by passing vehicles. His push cart was in the roadway, and he was standing on the side toward the center of the street, facing the sidewalk, showing his wares to a customer, but taking no heed whatever of the traffic in the street. His unlawful occupation of the street contributed to his accident, unless the defendant's driver willfully or wantonly ran into him."

Two of the justices dissented in an opinion which said:

"The mere fact that the plaintiff was there selling merchandise out of his push cart, although it be granted that he was there unlawfully, is not enough in itself, as matter of law, to make out a case of contributory negligence against him. The two things are not synonymous."

The case at bar is clearly differentiated because the plaintiff was not engaged in vending his goods, was not standing out in the street beyond his push cart, and there was evidence from which, but for the

.charge, it could have been found that he was not guilty of contributory negligence.

There is no rule of law making the presence in the street of a push-cart peddler contributory negligence per se. Like any one else using the streets, the peddler may be guilty of contributory negligence, and this may be so as matter of law; but it is because of what he does or does not do, and not because of what he is.

In Cohn v. Palmer, 78 App. Div. 506, 79 N. Y. Supp. 762, a push-cart case, the same learned Appellate Division said:

"The plaintiff. if his story is accepted, had withdrawn from the activities of the street. He had placed his cart up alongside of the curbstone and was standing there resting. This could not be said to be negligence as a matter of law."

Under the facts of this case, the plaintiff could no more be considered as unlawfully obstructing the street than a grocer's wagon drawn up before a house to deliver groceries, or an ice wagon, or a coal cart. The case differs essentially from Cohen v. Mayor, 113 N. Y. 532, 21 N. E. 700, 4 L. R. A. 406, 10 Am. St. Rep. 506. There the wagon was habitually and permanently stored in the street at night. In Callanan v. Gilman, 107 N. Y. 360, 14 N. E. 264, 1 Am. St. Rep. 831, the court points out numerous temporary encroachments and obstructions which are not necessarily nuisances and lays down the rule:

"Whether an obstruction in the street is necessary and reasonable must generally be a question of fact to be determined upon the evidence relating thereto."

In our opinion the question of whether or not the plaintiff was guilty of contributory negligence was not a matter of law, but a question of fact for the jury to consider upon all the evidence.

The determination of the Appellate Term and the judgment of the City Court must, therefore, be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.