People ex rel. East Side Harlem S. Assn., Inc., *v.* Hylan.   341

Misc. 341]                     Supreme Court, March, 1922.

cannot agree.   Some annoyance may possibly always be suffered by the presence of a neighbor in whose premises any kind of noise occurs.   Ordinarily the sound of a singing voice would scarcely be not ceable in adjoining premises if separated by adequate independent walls.   The contrary result in the instant case is due as much to the character of plaintiff's building as to the use by defendant of her residence, of which complaint is made.   There is clearly a vast difference both in degree and kind between instruction of private pupils in singing and the manufacture of brass and woodwork, even though incidental to a course of instruction, which was involved in one of the leading cases cited by plaintiff.   *Dallas v. Ladies' Decorative Art Club of Philadelphia*, 4 Penn. C. C. Rep. 340; affd., 13 Atl. Rep. 537, opinion (*sub nom. Ladies' Decorative Art Club's Appeal*) in 10 Sadler (Penn.), 150.   I should not feel warranted in granting a preliminary injunction on so slender a foundation as that instruction in singing conducted in an orderly and proper manner in this great city teeming with multifarious activities is, *per se*, to be adjudicated a nusiance.   Motion denied.

Ordered accordingly.

---

The People of the State of New York ex rel. East Side Harlem Storekeepers Association, Inc., and Philip Goldman, Petitioners, *v.* John F. Hylan, as Mayor of the City of New York, Richard Enright, as Police Commissioner of the City of New York, and Edwin J. O'Malley, as Commissioner of the Department of Markets of the City of New York, Respondents.

Supreme Court, New York Special Term, March, 1922.

**Mandamus — highway — part of street may, by ordinance, be designated as public market if passage is not thereby entirely restricted.**

A pushcart market is now maintained between the hours of nine A. M. and five P. M. on Park avenue between One Hundred and Eleventh and One Hundred and Sixteenth streets, under the authority of the board of aldermen of the city of New York.  At this point the avenue is ninety-two feet wide and the market occupies only the forty-six feet in the middle of the street where it is practically unused for highway purposes on account of its being under the elevated tracks of the New York Central railroad.  *Held*, that an application made jointly by a property owner and by an association of occupants of stores along the avenue at the point where the market is located, for an order in the nature of a peremptory mandamus directing the municipal authorities to remove and abate said market, will be denied, it appearing that the complaint is directed not to the misuse of the highway as such, but to certain consequential results which follow from the occupation of the unused part for market purposes.

Application for an order in the nature of a peremptory mandamus.

342  People ex rel. East Side Harlem S. Assn., Inc., *v.* Hylan.

Supreme Court, March, 1922.                    [Vol. 118

*Samuel Brand,* for petitioners.

*John P. O'Brien,* corporation counsel, for respondents.

Bijur, J.   This is an application for an order in the nature of a peremptory mandamus directing the appropriate authorities of the city to remove and abate the pushcart market now maintained between the hours of nine A. M. and five P. M. on Park avenue, between One Hundred and Eleventh and One Hundred and Sixteenth streets, under the authority of the board of aldermen.   The application is made jointly by a property owner and by an association of occupants of stores along the avenue at the point where the market is located.   It is, of course, axiomatic that ordinarily the municipality has no authority to authorize obstructions in the streets.   *Kelsey* v. *King,* 1 Tr. App. 133; *Johnson* v. *City of New York,* 186 N. Y. 139; *Peace* v. *McAdoo,* 46 Misc. Rep. 295; affd., 110 App. Div. 13; *People* v. *Lowber,* 28 Barb. 65, 69.   On the other hand, a market is more or less of a public institution.   In early times in England the occupation for market purposes of important streets was so common as to have left its impress on the names of many thoroughfares.   There is also a still existing practice of holding costermonger markets.   *Keep* v. *Vestry of St. Mary's, Newington,* L. R. [1894] 2 Q. B. 524.   Whether the markets preceded the streets or the streets the markets is not always clear. *Mosley* v. *Walker,* (1827) 7 B. & C. 40, 52, 53; *King* v. *Starkey,* (1837) 7 Ad. & El. 95, 105.   It suffices to note that a public interest in markets has always been recognized.   The peddler or hawker also has been regarded as pursuing a lawful calling on the highway subject to reasonable limitations and appropriate control. *Collender* v. *Reardon,* 138 App. Div. 738.   The learned corporation counsel urges that under the Farms and Markets Law (Laws of 1917, chap. 802) authority has impliedly been conferred upon the municipal authorities to appropriate for market purposes any part of a street not devoted to any other use.   This inference, it is suggested, is to be drawn from section 70 of the act defining a market as " any part of a street * * * assigned to or set apart by law or ordinance or other competent authority to be used for such purpose," and from section 78 that the " local authorities of a city * * * may designate for use as public markets any lands owned by the city and not dedicated or devoted to another inconsistent use."   Although those provisions are far from expressly going to the length claimed, they do, in the light of the declaratory preamble in section 3 of the act, and the known emergency which inspired its passage, present a seriously arguable proposition.   A further consideration in the instant case

is that Park avenue at this point is ninety-two feet wide and that the market occupies only the forty-six feet in the middle of the street where it is practically unused for highway purposes because it lies under the elevated tracks of the New York Central railroad. Passage along the used and usable part of the roadway is entirely unrestricted. Nor is it claimed that the petitioners' right of access to their own premises is interfered with. Indeed, the complaint made by the president of the plaintiff association in his affidavit is that pedestrians are attracted to the pushcart market and traverse it from end to end, thus abandoning the sidewalk to the injury of the business of the shopkeepers. This alleged grievance arises, therefore, not from the obstruction of the highway, but from the establishment of competition which would be equally effective if conducted on adjacent land other than the highway itself. The action of the municipal authorities complained of has actually removed from the traveled portion of this and adjacent streets peddlers who might there lawfully ply their calling. In that aspect the establishment of the market may almost be regarded as a regulation of traffic with the result of removing part of it from the practicable portions of the roadway to that part of it which is not substantially available nor actually used for highway purposes. Having in mind, therefore, that the illegality of the ordinance is not clearly established, that the alleged obstruction to traffic on the highway is only theoretical and that in point of fact it actually relieves some existing congestion, that the complainants themselves do not and cannot pretend that actual passage over the practicable roadway is interfered with and that the complaint is directed not to the misuse of the highway as such, but to certain consequential results which follow from the occupation of the unused part for market purposes, I am of opinion that the order of mandamus should not issue. As a general rule the granting of the writ of mandamus has always been regarded as resting in the sound discretion of the court. *Matter of Steinway,* 159 N. Y. 250, 259. The difficulty of distinguishing strictly between matters of judicial discretion and matters of right when the lines approach closely has been the subject of endless discussion in the books. The wide range of the subject is illustrated by *Tompkins* v. *Sands,* 8 Wend. 462, 468; *Osborn* v. *U. S. Bank,* 9 Wheat. 738, 866, Marshall, Ch. J.; *Schilling* v. *Reagan,* 19 Mont. 508, 512. See, also, *Steinleger* v. *Frankel,* 117 Misc. Rep. 693. While it has often been held that the writ will not issue unless the right which it is designed to enforce is clear (*People ex rel. Pumpyansky* v. *Keating,* 168 N. Y. 390, 398), it does not follow that it necessarily issues upon the mere establishment of such right or even the absence of any other

legal remedy. *People* v. *Dowling,* 55 Barb. 197; *Ex parte Ostrander,* 1 Den. 679. The modern tendency is to regard it as largely discretionary. *People ex rel. Lehmaier* v. *Interurban Ry. Co.,* 177 N. Y. 296, 302. It will not issue " to compel a compliance with the strict letter of the law in disregard of its spirit." *People ex rel. Wood* v. *Assessors,* 137 N. Y. 201, 204. Emphasis has been laid particularly in this jurisdiction upon a consideration of the substantial interest and *bona fides* of the applicant even where an undoubted legal right is shown to exist. *People ex rel. Britton* v. *Am. Press Assn.,* 148 App. Div. 651. Upon the foregoing considerations this motion is denied.

Ordered accordingly.