## SUPREME COURT.

In the Matter of the People *ex rel.* James D. Mc-
Clelland agt. Joseph Dowling and Richard Kelly,
Justices, &c.

It is a well settled rule in this state, that an application for a *mandamus*, rests in the
sound discretion of the court, which will grant or refuse it according as the issu-
ing or withholding it will best promote the ends of justice.   And this is so, not-
withstanding it may appear that the party applying is otherwise remediless.

On an application by the *relator, an attorney at law,* for a *mandamus* to compel the
defendants, justices of the court of special sessions, in the city of New York, to
allow the *relator* to practice in that court, from which he alleged they had debar-
red him :

*Held.* 1st. That a refusal to listen to the *relator* in a single case, cannot alone be re-
garded as debarring him from practice in that court, and therefore would not jus-
tify it.

2nd. That the only act of the justices shown, related to but one case, *which was end-
ed* before this proceeding was initiated, and therefore his general rights not being
affected, there was *nothing pending* in which the *relator* had any interest, which
could give him a standing in court to ask for a mandamus.   And

3d. That this court should hesitate long, before attempting to control, by mandamus,
the action of magistrates who, even if it be conceded that they have exceeded
the strict limit of their authority, are acting for the highest interests of the pro-
fession and the public, and deserve the greatest commendation and support.

*Special Term, July,* 1869.

Motion by the *relator* to compel the defendants to permit
him to practice, as an attorney at law, in the courts held by
them, &c.

Cardozo, J. It is very well settled in this state that a
mandamus will not issue when there is another adequate
remedy, but that the converse of that is not invariably true.
Therefore, although except by that writ, a party may be
remediless, that does not necessarily require that it should
issue, but the application for it rests in the sound discretion
of the court, which will grant or refuse it according as the
issuing or withholding it will best promote the ends of jus-

Matter of McClelland agt. Dowling.

tice. Guided by these simple rules, there can be no difficulty in disposing of this motion. It is plain that a mandamus should not issue.

The case fails to disclose any personal malevolence against the relator, but very clearly shows that Mr. Justice Dowling and his associate, Mr. Justice Kelly, have long set themselves against a system which has become so notorious that none of us can shut our eyes to its existence—a system which drives many reputable lawyers from courts which formerly were graced by the learning and character of such men as the Hoffmans, the Grahams, the Bradys, the Blunts, the Sandfords, and the O'Connors of our profession, and which should be honored by their legitimate successors, but who feel that the class against whom the action of the respondents is directed bring practice in the criminal courts into disrepute. Until this shameless conduct shall cease, and the disreputable practioners are driven from among us, I see no safety for those of the poorer class who are charged with crime before the inferior criminal tribunals, unless, as I trust will be done, the legislature shall interfere and provide for the employment by the county of some reputable lawyer to protect that unfortunate class of citizens, just as we now protect the rights of the rest of the people of the state, by employing a public prosecutor.

If, in efforts directed against a system and a class, to guard the practice of the profession against the unworthy, an innocent individual should occasionally suffer temporarily, it is to be deplored, but I should still hesitate very long before attempting to control, by mandamus, the action of magistrates who, even if it be conceded that they have exceeded the strict limit of their authority, are acting for the highest interests of the profession and the public, and deserve the greatest commendation and support. I think sound judicial discretion demands that, without passing upon the question of power in the court below, I should say that I will not interfere by this extraordinary remedy, believing that it

is better for the public that some temporary inconvenience and loss should be borne, even by a perfectly innocent individual, rather than that purposes so worthy should be at all thwarted by the action of this court; especially when I can say, as I do to this relator, that I have confidence that when on a proper occasion his rights are presented to the magistrates, they will be fully respected without the necessity of any interposition by this court.

That confidence I derive in this instance not only from the reputation of the magistrates, but from the spirit pervading the opposition to this motion, which displayed itself, among other things, in the kindly invitation by the respondent's counsel to the relator, throughout the case, to present a further affidavit in respect to the charge against him by the woman Hoch. The relator, under that invitation, did at a late stage of the proceedings make an affidavit much more explicit than that which he presented to Judge Dowling, and exhibiting the matter in a different light from that in which it first appeared; and I do not doubt that if he had originally respectfully presented that to the magistrate, it would have been regarded as satisfactory.

When I see such a disposition to afford opportunity to the relator to place himself aright, I think I cannot err in saying that he can safely trust the justice of the magistrates, and that to them he should be remitted.

These views would dispose of the present application, and therefore I shall not consider the question of the power claimed to exist in the court below, to suspend a lawyer from practice temporarily until the charges against him can be reported to this court for its action. But there are other conclusive reasons why this motion should be denied.

If it be conceded that the writ should go when an attorney is *debarred* by a subordinate court without authority, which is the most that can be claimed, still this application should not be granted, because a case of debarring is not made out. The most that can be pretended is that on a

Matter of McClelland agt. Dowling.

single occasion—in Wood's case—the magistrate refused to hear the relator, and that subsequently they stated that they would not allow him to practice in that court. But this does not amount to a debarring of the relator, and since the Wood case, he has had no business in the court, and has made no attempt to appear and practice there.

If it be assumed that the court of special sessions is only a court of record, for some purposes, and that all its orders need not be formally entered in the minutes of its proceedings before they are to be considered perfect, as to which it is not necessary to, and therefore I do not express any opinion, still something more than a mere statement by the magistrates, that they would not, in future, permit the relator to practice, made when the latter had no business before the court, demanding that he should be heard, should appear.

This writ should not issue for trifling reasons. A refusal to listen to the relator, in a single case, cannot alone be regarded as debarring him, and, therefore, would not justify it. It might be a mere ebullition of temper, from which no human being is exempt, engendered, perhaps, by some temporary circumstance or feeling, for which a writ of mandamus would be a very inappropriate remedy.

But the conclusive answer to the application is that the only act of the magistrates shown, related to but one case which was ended before this proceeding was initiated, and, therefore, his general rights not being affected, there is nothing pending in which the relator has any interest which can give him a standing in court to ask for a mandamus.

In the absence of any record evidence of an order debarring the relator, at least a determined and persistent refusal to hear him, upon proper demand, when business gave him a right to be heard, must be shown before the motion can be successful. In other words an illegal *debarment* must be shown, either by an order duly made and entered, or by *acts* (not mere words), which practically work debarment.

Even if the remarks attributed to the justice were made by him, I am not at liberty to say that when the relator duly, on some proper occasion when he has business entitling him to it, asks recognition of his license to practice, it will not be accorded to him.

I have no right to presume that a magistrate will not perform his duty, even though he may have hastily or thoughtlessly expressed himself as to what his course would be, at a time when he was not called upon to act judicially. Until some *act* towards putting into excution the determination which the respondents are alleged to have expressed, to exclude the relator from practice, has been done, I must presume that none such will occur; and, if not, a mandamus should not go to oblige them to retract language which they may have uttered.

Until dereliction from duty on the part of a magistrate clearly and positively appears by something more solemn than mere words, which may be spoken to-day and disregarded to-morrow—something more practical than a mere declaration of an intent as to the future, which may be formed now, and changed before the time to put it into execution arrives—something, in respect to a subject like the present, at least like, for instance, as I have already said, a determination to exclude the relator from practice, exhibited either by an order duly entered, or by persistent refusals in cases where the relator was retained, and appeared and claimed his rights, or by some *act* of the justice manifesting such a determination. I think no case for this extraordinary remedy is made. Motion denied.