officers having the management of the concerns of a corporation may make a petition," etc. But, even if they could be, still the court had no power in such proceedings to appoint receivers, or compel the delivery of the property and assets of the bank to such receivers, without the consent of the bank superintendent. The banking law confers the power upon the bank superintendent to determine whether he should hold the property to await the determination of the proceedings instituted by the attorney general, and the court could not, in these proceedings, interfere with the custody and control of the property by the bank superintendent without his consent. The bank superintendent was regarded by the legislature as more competent, from his position and knowledge of banking matters, to determine this question, than the court; and the clear design of the banking act was to leave this question to him, and not to the court.

For these reasons I am of the opinion that the order appealed from should be reversed, with costs, and the motion denied, with costs; or that the order appealed from should be modified by striking out all provisions as to the receivers, and, as modified, affirmed, without costs.

---

(9 App. Div. 554.)

In re DIRECTORS OF MURRAY HILL BANK. (No. 756.)

(Supreme Court, Appellate Division, First Department. November 6, 1896.)

RECEIVERS—DELIVERY OF PROPERTY TO.

> One who has, by order of court, delivered property of a corporation to receivers, will not be afterwards ordered to deliver it to other receivers appointed in a different action.

Appeal from special term, New York county.

Application by a majority of the directors of the Murray Hill Bank for a voluntary dissolution of said bank. From an order denying a motion by Spencer Trask and Miles M. O'Brien, temporary receivers of said bank, theretofore appointed, to compel the superintendent of banks to deliver to them the books, papers, and assets of the bank, or for a peremptory writ of mandamus to compel such delivery, and to restrain the superintendent from turning such books, papers, and assets over to any other person, the receivers appeal. Affirmed.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Saml. Untermyer and Louis Marshall, for appellants.

T. E. Hancock, Atty. Gen., and W. E. Kisselburgh, Jr., Dep. Atty. Gen., for respondents.

INGRAHAM, J. We do not concur in the opinion of Mr. Justice WILLIAMS. We do not think, however, that it is necessary on this appeal to pass upon the questions discussed by him, as this order must be affirmed upon the ground that it appeared on the motion that, prior to the time the motion was argued, the superintendent of banks had turned over to certain receivers appointed in

another action all the property, assets, and books of the bank then in his possession; and that he was no longer in possession of such property.    The motion which resulted in the order appealed from was to compel him to turn over to the receivers appointed in this action all the books, papers, and assets of the bank, or to show cause why a permanent mandamus should not issue against him directing him to deliver possession thereof to the receivers.    It appearing that he had not then in his possession any of the property in question, an order directing him to turn over such property would be ineffectual.

The order is therefore affirmed, with $10 costs and disbursements.

VAN BRUNT, P. J., and O'BRIEN and PATTERSON, JJ., concur.

WILLIAMS, J.    The facts are undisputed, and are as follows: August 11, 1896, the bank superintendent, having examined the affairs of the bank, arrived at the conclusion not only that there had been an impairment of the capital, and that the bank was in an unsafe and unsound condition to do banking business, but that it was insolvent, its liabilities exceeding its assets by more than $230,000, and it had closed its doors, and suspended its ordinary and lawful business.    Thereupon the bank superintendent on that day took possession of the property and business of the bank, under the provision of section 17, c. 689, of the banking act of 1892. Thereafter, and on the 28th of August, 1896, the directors instituted proceedings for the voluntary dissolution of the bank, under the provisions of section 2419 et seq., Code Civ. Proc.    A petition was made by a majority of the directors, and upon such petition and accompanying papers an order was made by a justice of the court on that day, directing the attorney general of the state to show cause, September 1, 1896, at a special term in New York City, why the usual order should not be granted, requiring all persons interested in the bank to show cause why the bank should not be dissolved, and why a temporary receiver should not be appointed, and directing the order to show cause to be served upon the attorney general on or before August 29, 1896.    August 31, 1896, the attorney general prepared a summons and complaint, and had the latter verified in an action in the name of the people, against the bank to procure its dissolution, and the appointment of a receiver.    On the return of the order to show cause, September 1, 1896, the matter was heard at special term, New York City, Mr. Justice Pryor, presiding.    The attorney general objected to the making of an order in the proceedings, and especially to the appointment of any receiver by reason of the bank superintendent having taken possession of the books, papers, and assets of the bank, under the provision of section 17 of the banking act.    The court, however, made an order September 2, 1896, containing the usual provisions, and appointing the appellants receivers of the bank, providing for security, and directing the receivers so appointed to take possession of the property of the bank, to collect

the debts, demands, and other property of the bank, etc.   September 3, 1896, copies of this order and of the receivers' bonds, which had been executed and approved and filed, were served upon the attorney general, and the receivers made efforts soon thereafter to induce the bank superintendent to surrender and deliver to them the books, papers, and assets of the bank.   The bank' superintendent, however, declined to make such delivery.   September 4, 1896, the attorney general caused the papers prepared August 31, 1896, to be served, thus commencing the action in the name of the people against the bank to procure its dissolution, and the appointment of a receiver.   September 10, 1896, upon the summons and complaint and an affidavit of the bank superintendent an order was made by a justice of the court, requiring the bank to show cause at a special term in city of Newburgh, September 12, 1896, why an order should not be made appointing a receiver of the property and the assets of the bank during the pendency of the action, and restraining defendant and its officers, agents, and servants from exercising any corporate rights during the pendency of the action, and from transferring, disposing of, or interfering with the property or assets of the bank, and enjoining or restraining suits or proceedings against the bank, and restraining the defendant and its trustees, agents, and servants until the hearing of the motion, and directing service of the order to show cause on the defendant or its attorney on or before September 11, 1896. The service of this order was made as directed, and at the same time the attorney general and the bank superintendent appealed from Mr. Justice Pryor's order to the appellate division, First department.   In re Directors of Murray Hill Bank, 41 N. Y. Supp. 914.   On September 12, 1896, upon the return of the order to show cause, the matter came before the special term in the city of Newburgh, Mr. Justice Dickey presiding.   After hearing argument the court took the papers, and thereafter, on September 17, 1896, made the order asked for by the attorney general; among other things appointing receivers, and directing them to take possession of the books, papers, and assets of the bank, and directing the bank superintendent to turn the same over to the receivers.   The receivers qualified by giving the bonds required of them the same day, September 17, 1896, and the bank superintendent thereupon forthwith turned over to the receivers so appointed the books, papers, and assets of the bank, as directed by the order of Mr. Justice Dickey, and such receivers have since had the sole possession thereof.   In the meantime, and on September 14, 1896, two days after the hearing before Mr. Justice Dickey, and before his order was made, the appellants procured from a justice of the court an order requiring the bank superintendent and the attorney general to show cause at a special term in New York City, September 18, 1896, why the bank superintendent should not be compelled forthwith to deliver to the appellants the books, papers, and assets of the bank, or why a peremptory writ of mandamus should not issue against him, directing him to so deliver the books, papers, and assets, and why he should not be restrained from turning

them over to any other person, and requiring service of the order on or before September 16, 1896. This order was duly served, and on the return day thereof the matter came on at special term in New York City, Mr. Justice Truax presiding. September 25, 1896, the order was made denying this motion, and from such order this appeal is taken.

The ground upon which the learned justice denied the motion was that the court had no power to grant the motion, under the explicit language of section 1313, Code Civ. Proc. In a brief memorandum made by the learned justice he says: "The execution of the order made by Mr. Justice Pryor is stayed by the service of the notice of appeal therefrom, and therefore the motion to direct the superintendent of banks forthwith to deliver possession to the receivers named in such order must be denied."

It seems to me there were several good reasons for denying the motion made by the appellants.

1. The reason given by Mr. Justice Truax was sufficient in itself. The language of section 1313 of the Code is explicit, and there can be no doubt the effect of the service of the notice of appeal by the attorney general perfected the appeal from, and stayed the execution of, the order made by Mr. Justice Pryor. This principle was held and this construction given to section 1314, of similar import to section 1313, by the general term, First department, in People v. Daly, 75 Hun, 186, 27 N. Y. Supp. 283. That was an appeal from an order denying the relator's motion to compel the defendant to issue certain permits required by a peremptory writ of mandamus. An appeal had been taken by the defendant from the order granting the writ of mandamus, to the general term, and pending such appeal the motion was made resulting in the order from which this appeal was taken. This motion was denied upon the ground that this appeal operated to stay the proceedings under the writ. The general term held the motion was properly denied, upon the ground stated by the court making the order; Van Brunt, P. J., and Follett and Parker, JJ., sitting. The order was therefore affirmed, with costs. If the execution of the order made by Mr. Justice Pryor was stayed, then it was manifestly improper to grant the motion made by the appellants. The effect of that order, so far as the receivers themselves were concerned, their appointment, and the vesting of title to the property in them, was, by the stay, held in abeyance,— was undetermined; the order was liable to be reversed on appeal. But certainly the provision directing them to take possession of the property of the bank was stayed. It could not be executed by their taking such possession; and it would certainly be improper, under these circumstances, for the court, on another motion, to direct the bank superintendent to deliver to the receivers property which they had no right to receive under the order appointing them such receivers.

2. The motion should not have been granted, because it was not within the power of the bank superintendent to comply with the order or obey the writ of peremptory mandamus, if made or

granted, to deliver the property to the appellants. The bank superintendent had already delivered and turned over the property to other receivers appointed by the court in the action brought by the attorney general in the name of the people, and he was compelled to so turn over and deliver the property under and by the express provisions of the order of the court, which he could not disobey so long as the order remained in force. The order made by Mr. Justice Dickey was upon a motion where both parties to the action were heard. It was not a void order. The court had jurisdiction in the premises. The order could only be disposed of on appeal, or by motion to vacate or to modify it, and it does not appear that any such remedy has ever been taken. It would be strange if the court, having expressly ordered the bank superintendent to turn over and deliver the property of the bank to one set of receivers appointed by it, the same court, though not held by the same justice, or in the same county or department (in face of its former order, and proof that its direction had been obeyed by the bank superintendent by turning over and delivering the property, and that such property had entirely passed from his custody and control), should make another order, or issue its peremptory writ of mandamus, to compel the bank superintendent to deliver the same property to other receivers appointed by the court in other proceedings. The only remedy the appellants had was to appeal from the order made by Mr. Justice Dickey, or move to vacate or modify it; and, when successful in disposing of that order, the court could then reach the property in the hands of the receivers having its custody, and procure its delivery to the appellants, if it should be determined they were entitled to it.

3. The motion was properly denied, for the reason that the court had no power to compel the bank superintendent to surrender the property to the appellants. The statute under which the bank superintendent took possession of the property (Banking Act 1892, § 17) provides that the bank superintendent may take possession of the property, and retain such possession until the termination of the action or proceedings instituted by the attorney general, such as are authorized in the case of insolvent corporations. Discretion was thus clearly given to the bank superintendent, which he had the right to exercise, and which the court had no power to deprive him of. The banking act is an act relating solely to banks, while the provisions of the Code of Civil Procedure relate generally to all corporations, and provide proceedings for their voluntary dissolution. The banking act was the later expression of the legislative will, and it provides a scheme especially for the care of banks. So far as its provisions are inconsistent or conflict with the general provisions of the Code, the latter provisions must be held to be modified, and must give way. Clearly, the scheme of section 17 was to give the bank superintendent, in his discretion, the custody and control of the property of a bank pending the proceedings by action or otherwise instituted by the attorney general. He exercised the discretion, and took possession of this property. And the attorney gen-

eral with sufficient promptness instituted proceedings by action against the bank to procure its dissolution (by reason not only of impairment of its capital but gross insolvency), and the proper distribution of its assets among the creditors entitled to the same. The directors of the bank apparently conceived the idea of influencing the closing up of the bank and taking the property away from the bank superintendent, and they sought to make use of the proceedings for voluntary dissolution to accomplish their purpose. It seems to me they could not accomplish their purpose by any such means. While the provisions of the Code as to the voluntary dissolution of corporations very likely apply to banks as well as other corporations, still they must give way in the case of banks to those provisions of the banking law, which are inconsistent or in conflict with them. It may be doubtful if the proceedings for voluntary dissolution could be instituted at all under the provisions of the Code, after the property and business of the bank had been taken possession of and were held by the bank superintendent; the provision being that "a majority of the directors, trustees, or other officers, having the management of the concerns of a corporation, * * * may make a petition," etc. (Code Civ. Proc. § 2419); but, even if they could be, still the court had no power in such proceedings to appoint receivers, or compel the delivery of the property and assets of the bank to such receivers, without the consent of the bank superintendent. The banking law conferred the power upon the bank superintendent to determine whether he should hold the property to await the determination of the proceedings instituted by the attorney general, and the court could not, in these proceedings, interfere with the custody and control of the property by the bank superintendent, without his consent. The bank superintendent was regarded by the legislature as more competent, from his position and knowledge of banking matters, to determine this question than the court, and the clear design of the banking act was to leave this question to him, and not to the court.

For these three reasons I am of the opinion the order appealed from was properly made, and should be affirmed, with costs.