(120 App. Div. 751)

PEOPLE ex rel. O'BRIEN v. BUTLER, Tenement House Com'r.

(Supreme Court, Appellate Division, First Department. July 15, 1907.)

1. MANDAMUS—NATURE—MANDAMUS INEFFECTUAL.
   Mandamus will not lie to compel the tenement house commissioner of the city of New York to audit and pay the salary of a tenement house inspector, since he has no authority under the Greater New York charter to do so.

2. SAME—NATURE OF RIGHT TO BE ENFORCED.
   Mandamus will lie to collect a claim only where, upon both the facts and the law, it clearly appears that there cannot be a defense to it.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 33, Mandamus, § 223.]

3. MUNICIPAL CORPORATIONS — OFFICERS — SUSPENSION — TRIAL OF CHARGES—PAY.
   Under section 1331, Greater New York Charter (Laws 1901, p. 562, c. 466), declaring that the tenement house commissioner may provide that the failure of an inspector to properly perform his duties shall cause a forfeiture of the whole or any part of his salary, the commissioner had the power to suspend an inspector without pay pending the determination of charges rendered against him.

4. SAME—TIME RESULT OF TRIAL TAKES EFFECT.
   Where a tenement house inspector was suspended during the pendency of the trial of charges against him, his removal as a result of the trial related back and took effect as of the date of the suspension.

Appeal from Special Term.

Mandamus by the people, on the relation of William F. O'Brien, against Edmond J. Butler, as commissioner of the tenement house department of the city of New York. From an order granting a peremptory writ, the defendant appeals. Reversed.

Argued before INGRAHAM, McLAUGHLIN, HOUGHTON, CLARKE, and LAMBERT, JJ.

Theodore Connoly, for appellant.
Edward Stetson Griffing, for respondent.

McLAUGHLIN, J. The relator was appointed to the position of tenement house inspector on the 2d of June, 1902, at a salary of $1,200 per year. Prior to the 27th of July, 1906, charges were preferred against him for misconduct and incompetency, with specifications to the effect that he had violated certain rules and regulations of the tenement house department of the city of New York by being absent without leave from July 17 to July 21, 1906, inclusive, and failing to notify the department, in writing or otherwise, until the latter date; also in violating rule 23, in that he had failed during the time of his ab-

sence to return certain records which he had in his possession. He was served with a copy of such charges, together with the specifications, and a notice that he would be afforded a hearing on the 27th of July, 1906, at a time and place named. The hearing was adjourned, and prior to the 5th of September, 1906, other charges were preferred against him of misconduct, which contained specifications to the effect that he had acted in an insolent manner towards the owner of certain premises, in violation of rule 8 of the rules and regulations of the tenement house department, and had also violated other rules in certain respects, which were named, and a copy of these charges and specifications was served upon him, together with a notice that he would be afforded a hearing on the 5th of September, 1906, at a time and place named. This hearing was also adjourned. On the 8th of October certain other charges were preferred against him of misconduct and incompetency, together with specifications, copy of which was served upon him, with notice that he would be afforded a hearing on the 12th of October at a time and place named. On the 9th of October he was suspended without pay, pending the result of the charges made against him. The hearing of all of the charges was thereafter adjourned several times, twice at least at the relator's request; but a hearing was finally had on January 3, 1907, which resulted in the relator being found guilty and on the 2d of February following being removed from the tenement house department.

It is not suggested that the relator did not have a fair hearing, that he was not guilty of the charges, or that he was not properly dismissed from the service. Nevertheless he thereafter demanded from the appellant the salary alleged to be due him between the time he was suspended and dismissed. This being refused, he presented a claim to the comptroller and underwent an examination with respect thereto. His claim not having been paid, he applied to and obtained from the Special Term of this court an order directing the issuance of a peremptory writ of mandamus commanding the appellant, as commissioner of the tenement house department of the city of New York, to audit and pay, or cause to be audited and paid, to him the salary alleged to be due from the time he was suspended, October 9, 1906, until he was removed, February 2, 1907. It is from this order the appeal is taken.

I am of the opinion that the order must be reversed. The tenement house commissioner has no power either to audit and pay, or cause to be audited and paid, the amount claimed by the relator, even if it were one which the city of New York were legally obligated to pay. The department of finance has control of the fiscal concerns of the city, and all payments by or on its behalf, unless otherwise specifically provided, must be made through the proper disbursing officers of such department, and on vouchers filed therein, and by means of warrants drawn on the chamberlain by the comptroller and countersigned by the mayor. Section 149, Greater New York Charter (Laws 1901, p. 50, c. 466). This department consists of six bureaus (section 151), of which the fourth is:

"An auditing bureau, which, under the supervision of the comptroller, shall audit, revise and settle all accounts in which the city is concerned as debtor or creditor, and the chief officers whereof shall be called auditors of accounts."

The chamberlain is directed to pay all warrants drawn on the treasury by the comptroller and countersigned by the mayor—

"and no moneys shall be paid out of the treasury except on the warrant of the comptroller so countersigned. No such warrant shall be signed by the comptroller or countersigned by the mayor, except upon vouchers for the expenditure of the amount named therein, examined and allowed by an auditor of accounts, approved by the comptroller and filed in the department of finance." Section 195.

The general scheme of the charter is that all claims against the city, unless provision be otherwise made, must first be audited by the auditors of the comptroller's office, and, when so audited, a warrant is to be drawn upon the chamberlain, signed by the comptroller, and countersigned by the mayor. No provision is to be found which authorizes the tenement house commissioner to either audit or pay the salaries of inspectors in his department. A writ of mandamus, therefore, would be ineffectual to accomplish the object sought, because the tenement house commissioner has no power to do what he is directed to do. Such writ never issues to compel the performance of an impossible act. Matter of Murray Hill Bank, 9 App. Div. 554, 41 N. Y. Supp. 920; Spelling on Injunctions and other Extraordinary Remedies (2d Ed.) § 1377. It only issues when the relator has a clear legal right to have some act performed by the officer or board to whom the writ is directed. Matter of Hamburger v. Board of Estimate, 109 App. Div. 427, 96 N. Y. Supp. 130.

It is not the usual proceeding for the enforcement of a claim or the collection of a salary, and it is only where, upon both the facts and the law, it clearly appears there cannot be a defense to the claim, that the court exercises its discretionary powers by compelling payment in this way. People ex rel. Lentilhon v. Coler, 61 App. Div. 223, 70 N. Y. Supp. 482; People ex rel. Ajax v. Board of Education of City of New York, 104 App. Div. 162, 93 N. Y. Supp. 300. The relator's claim does not fall within this class, either upon the law or the facts. He was not suspended indefinitely without pay, but simply during the determination of charges which had been made against him; and in my opinion the commissioner had the power, under section 1331 of the charter, to suspend during that time. It would be a strained construction of this section of the charter to hold that an officer, who was concededly liable to be removed because of misconduct in office, should be permitted, during the term of his suspension, to draw the salary attached to the office, where it appeared upon the hearing that the facts not only warranted a dismissal at the time the charges were made, but that the delay which occurred was to a considerable extent due to himself.

The cases of Gregory v. Mayor, 113 N. Y. 416, 21 N. E. 119, 3 L. R. A. 854, and Emmitt v. Mayor, 128 N. Y. 117, 28 N. E. 19, are not in conflict with this view. In those cases the statute did not in terms provide for a suspension, but it was urged that the power to remove carried with it the power to suspend indefinitely without pay; but the court held, under the facts presented, this was not a proper construction of the law. Here, as we have already seen, the commissioner not only had the right to remove, but also to suspend, and, if the sus-

pension were during the pendency of the trial of charges, the result of the trial, in case of removal, related back and took effect as of the date of the suspension. People ex rel. Curren v. Cook, 117 App. Div. 788, 102 N. Y. Supp. 1087.

It follows that the order appealed from should be reversed, with $10 costs and disbursements, and the motion denied, with $10 costs. All concur.

Argued before PATTERSON, P. J., and INGRAHAM, CLARKE, HOUGHTON, and LAMBERT, JJ.

