216   People ex rel. Mullen Cont. Co., Inc., v. Craig.

Supreme Court, January, 1921.   [Vol. 114.

The People ex rel. H. J. Mullen Contracting Company, Inc., Relator, v. Charles L. Craig, as Comptroller of the City of New York, John F. Hylan, as Mayor of the City of New York, and Philip Berolzheimer, as Chamberlain of the City of New York, Respondents.

(Supreme Court, Kings Special Term, January, 1921.)

Mandamus — when denied against comptroller of the city of New York — contracts — municipal corporations — fraud — Greater New York Charter, §§ 149, 419.

Mandamus lies against public officers to compel the performance of ministerial duties which are clearly absolute and imperative.   (P. 217.)

Where although the various engineers and auditors whose duty it is, as a condition precedent to the issuance of a warrant of the city of New York on account of work done pursuant to a municipal contract involving an expenditure of more than $1,000, to examine into the matter, have certified that work of the character and quantity entitling a contractor to receive a progress payment in a certain sum, has been done, the city comptroller may delay payment pending an examination by him under section 149 of the Greater New York Charter of the contractor under oath with respect to facts and circumstances surrounding the public letting of the contract, in order to determine whether it was of the character provided in section 419 of the Greater New York Charter, and whether there was collusion in the bidding or fraud in the performance of the contract.   (Pp. 222, 223.)

Where the contractor refuses to fully submit to such an examination, his application for a writ of peremptory mandamus to compel the issuance of the warrant will be denied as matter of discretion.   (P. 225.)

The exception in said section 149 of the Greater New York Charter which refers to " claims arising under the provisions of contracts made at public letting in the manner provided by section 419 of this act " was intended only to prevent an inquiry into the manner in which a contract validly entered

into by the city has been performed, and not to one where the circumstances indicate that the contract originated in fraud; the exception, therefore, is not controlling in the present case.   (P. 224.)

APPLICATION for a writ of mandamus.

John C. Wait, for relator.

John P. O'Brien, corporation counsel, for respondents.

Charles L. Craig, comptroller of the city of New York, in person.

BENEDICT, J.   This is an application for a writ of mandamus requiring the comptroller to deliver to the relator a warrant of the city of New York for $35,244 on an account of work done under a contract for regulating, paving, etc., Third avenue from First to Thirteenth streets, College Point, borough of Queens.

The writ of mandamus, generally speaking, issues only in cases where there is a clear legal right in the relator and there is no other adequate and legal means to obtain it.   In the case of public officers it issues to compel the performance of ministerial duties which are clearly enjoined as absolute and imperative.   The writ is prerogative in its character to the extent that its issue is not of right but of discretion. *People ex rel. McMackin* v. *Police Commissioners,* 107 N. Y. 235; *People ex rel. Faile* v. *Ferris,* 76 id. 329. The discretion to be exercised is a judicial one.   *People ex rel. Gas-Light Co.* v. *Common Council,* 78 N. Y. 56; *Shepard* v. *Oakley,* 181 id. 339; *People ex rel. McClelland* v. *Dowling,* 55 Barb. 197.

The present application involves the question whether, under the charter of the city of New York,

the comptroller has the power to exercise any judgment or discretion regarding the payment of claims against the city of New York arising under contracts, or whether he is merely the custodian of the city's funds and obliged to pay therefrom any and all claims against the city upon contracts which have been made after public letting. The facts in the case are set out at considerable length in the petition and affidavits of the relator and in the answering affidavits submitted on behalf of the respondent. It will not be necessary to recite them in detail here. The contract referred to in the petition was one entered into after compliance with the charter forms and provisions regulating the giving out of contracts by public letting. The relator contends that the comptroller is precluded from any inquiry under section 149 of the charter to ascertain whether in point of fact there has been a valid contract awarded at a public letting of the character provided in section 419 of the charter. If the relator be correct in that proposition, then the comptroller is stripped of all power to conduct any inquiry into the validity of such a claim further than to ascertain from the reports of various officials whether the work required to be done by the contract has been done in the manner therein prescribed.

In the present case it has been certified by the various engineers, or auditors, whose duty it is to examine into the matter as a condition precedent to the preparation of the warrant, that work of the character and quantity entitling the claimant to receive the progress payment in the sum of $35,244 has been done by the contractor.

The only question, therefore, which requires solution in the determination of this application is whether the comptroller may examine the claimant under oath with respect to facts and circumstances surrounding

the public letting of the contract in order to ascertain whether it was of the character provided in section 419 of the charter. If it were, the relator is doubtless right in seeking payment by means of this writ. Section 419 is the familiar one providing for the public letting of contracts for work to be done or supplies to be furnished where an expenditure of more than $1,000 is involved. It confers upon borough presidents and heads of departments the power, without the consent or approval of any other department or officer of the city government, to award the contract to the lowest bidder, unless the board of estimate and apportionment, by a three-fourths vote of the whole board, shall determine that it is for the public interest that a bid other than the lowest should be accepted. In form the contract in question appears to have been regularly made pursuant to the provisions of the section referred to.

The charter, by section 149, provides further as follows: " * * * The comptroller may require any person presenting for settlement an account or claim for any cause whatever, against the corporation, to be sworn before him or before either of the deputy comptrollers, touching such account or claim, and when so sworn, to answer orally as to any facts relative to the justness of such account or claim. Willful false swearing before the comptroller or deputy comptrollers is perjury and punishable as such. He shall settle and adjust all claims in favor of or against the corporation, and all accounts in which the corporation is concerned as debtor or creditor; but in adjusting and settling such claims, he shall, as far as practicable, be governed by the rules of law and principles of equity which prevail in courts of justice. No claim against the city or against any of the counties contained within its territorial limits, or payable in the

first instance from moneys in the city treasury for services rendered or work done or materials or supplies furnished except (1) claims reduced to judgment, or (2) awards, costs, charges and expenses duly taxed or ordered paid in judicial proceedings, or (3) claims arising under the provisions of contracts made at public letting in the manner provided by section four hundred and nineteen of this act, or (4) claims settled and adjusted by the comptroller, pursuant to the authority of this section, shall be paid unless an auditor of accounts shall certify that the charges therefor are just and reasonable; and except as hereinbefore otherwise provided, all contracts with the city or any of such counties or with any public officer acting in its or their behalf, shall be subject to such audit and revision by the department of finance.  *   *   * ''

It appears from the comptroller's affidavit that on November 11, 1920, a warrant for $35,244 in favor of the petitioner on account of the contract in this proceeding was made ready by the bureau of audit of the comptroller's department, and pursuant to the comptroller's personal direction such warrant was sent to the comptroller's desk, together with the contract and the voucher upon which such warrant was based. The comptroller states that this direction was given by him in order that he might conduct such further inquiry and perform such duty of supervision as he felt that he was obliged to discharge for the protection of the city in this case. He lays particular stress upon the fact that prior to November 11, 1920, public charges had been made concerning the alleged fraudulent character of contracts entered into on behalf of the city, whereby, under pretense of open competitive bidding of the character contemplated by section 419 of the charter, collusive and illegal bidding had taken place at sums greatly in excess of fair and

reasonable prices for work to be done by contractors for the city; and in this connection he calls attention, in a general way, to the proceedings before the joint legislative committee on housing, and before grand juries in the county of New York, and to the further fact that numerous criminal prosecutions had been instituted against individuals, firms and corporations who had theretofore entered into contracts with the city, some of which prosecutions had resulted in the defendants pleading guilty.

The comptroller shows that certain information concerning the dishonest and fraudulent character of bidding for public work of the city, particularly in the borough of Queens, had come to his attention, and that he had communicated with the heads of the different city departments in regard to it, as well as with the legislative committee, and that on account of these facts and of others which he refers to concerning the relations between this relator and other bidders for city work he desired to examine the relator through its president concerning the claim for which the warrant had been asked. He states that he notified Mr. Mullen, the president of the relator, to submit to an oral examination under oath before the comptroller before the warrant would be delivered. He shows further that the president of the relator appeared for such examination, which was begun on November 11, 1920, but that before it had been concluded by the comptroller, and after Mr. Mullen had testified to some extent concerning the contract, he requested an adjournment in order that he might produce certain papers, which he said were in his possession, in connection with the contract, and thereupon the examination was adjourned in order to enable him to produce the papers and to obtain further information required by the comptroller. The president of the relator did

Supreme Court, January, 1921. [Vol. 114.,

not, however, return to the comptroller's office for further examination, and although the comptroller endeavored for a number of days to get into communication with him, he never came back for the purpose of continuing the examination, and such examination has never been concluded. Extracts from his testimony are contained in the comptroller's affidavit.

In view of all these circumstances and the relations existing between the relator and certain materialmen referred to in the papers, it does not seem to me as though this were a case where the court ought to exercise the discretion reposed in it to compel the delivery of the warrant which the comptroller has in his hands. If a writ of mandamus were to issue, it would be tantamount to a decision by the court that the comptroller had no right in this case, or in other similar cases, to conduct the examination of the claimant under section 149 of the charter, for the purpose of inquiring into the question whether contracts which are made after public bidding must be regarded as binding upon the city of New York, even though they were originally obtained by fraudulent or collusive means, as the comptroller states that in his opinion was apparently the case here. I am not prepared to subscribe to any such doctrine. Fraud and collusion in obtaining contracts for public work are always a proper subject of inquiry, and I think that the comptroller of the city of New York was not only fully justified by the facts stated in the papers in the present case in desiring to prosecute the fullest possible inquiry into the *bona fides* of this contract, but that he would have been derelict in his duty if he failed to make such inquiry. In the case of public work running into many millions of dollars each year it is in the highest degree important for the protection of the taxpayers of the city that some official

should be clothed with the fullest powers of inquiry as to honesty, good faith and fairness of contractors who bid for public work. As I read the charter, it was the intention of the legislature not to make the comptroller of the city of New York merely an automaton, who must perfunctorily audit and pay all claims against the city which appear on their face to be regular. Rather I think it must be presumed to have been the legislative purpose to throw around the public treasury of the city the highest possible safeguards against fraud or collusion by conferring upon the comptroller, as the responsible head of the finance department of the city, the widest possible powers of investigation into the merits of all claims. This court should not be astute in finding technical reasons for limiting or destroying the comptroller's power of investigation surrounding the letting of the contract where the circumstances are such as to arouse reasonable suspicion, nor should it seek to substitute its judgment for the *quasi* judicial discretion of the comptroller in regard to the validity of claims presented to him in cases where there is any ground for believing that the contract was obtained by fraud.

The relator does not come before the court with clean hands. He has refused to submit fully to the oral examination provided for in section 149 of the charter. His learned counsel contends that that examination was extended by the comptroller beyond its proper scope. In this contention I cannot agree, because I think that under the circumstances as disclosed the matters upon which information was sought were pertinent to the examination, and properly came within the scope of the requirement of section 149, that he "answer orally as to any facts relative to the justness of such account or claim." I construe the exception in section 149 of the charter, which refers

to " claims arising under the provisions of contracts made at public letting in the manner provided by section four hundred and nineteen of this act," as not controlling in the present case. Fraud vitiates all contracts, and it is inconceivable that the legislature intended by this exception to create an estoppel against the city which would prevent an inquiry by the comptroller into the validity of the contract itself in cases of fraud. I think that this exception in the statute was intended only to prevent an inquiry into the manner in which a contract validly entered into by the city has been performed, and not to one where there were circumstances pointing to the probable conclusion that the contract originated in fraud.

In conclusion, I will refer to a few cases where our courts have had occasion to consider applications similar to the one now before this court. In *People ex rel. Beck* v. *Coler*, 34 App. Div. 167, Mr. Justice Cullen, conceding the right of the court to compel the comptroller by mandamus to pay the amount of a contract if the right to payment is clear, stated that the rule would be different if the city repudiated or denied the existence of the obligation; and he was particular to emphasize in that case that no allegation whatever of fraud was made. In *People ex rel. Lentilhon* v. *Coler*, 61 App. Div. 223, the Appellate Division in the first department went much further, and held that the payment of a debt will be enforced by mandamus only where upon both the facts and the law it clearly appears that there cannot be a defense to the claim, and therefore it confirmed an order of the Special Term denying a motion for a peremptory writ of mandamus directing the defendant to deliver to the relator a warrant on the chamberlain for an amount alleged to be due him under a contract with the city. The Court of Appeals dismissed the appeal

taken by the relator, Judge Edward T. Bartlett saying that it was clearly within the discretion of the Supreme Court to remit the parties to a common-law action. See 168 N. Y. 6. In *People ex rel. Guidet* v. *Green,* 66 Barb. 630, the General Term in the first department held that a mandamus will not lie to compel the payment of a money demand on contract where a proper remedy by action exists, Ingraham, P. J., saying: " More especially is such a rule proper where the facts upon which the claim is based are disputed." Mr. Justice Brady, in a concurring opinion, stated that " Neither in England nor in this state has a mandamus been allowed where there was a remedy by action and a reasonable doubt as to the validity of the claim, or any conclusion that it should be examined by due process of law."

I am constrained by the foregoing considerations to deny the present application, and this I do in the exercise of discretion, with ten dollars costs.

Ordered accordingly.