In the Matter of the Application of SULLIVAN W. JONES and JOHN E. KLEIST, Associates, Respondents, for a Peremptory Order of Mandamus against J. G. WILLIAM GREEFF, Commissioner of Hospitals of the City of New York, Appellant.

First Department, March 16, 1934.

*Willard S. Allen* of counsel [*Paul Windels, Corporation Counsel*], for the appellant.

*Thomas Jefferson Ryan*, for the respondents.

MARTIN, J. On or about March 15, 1929, the board of estimate and apportionment approved a contract by the city of New York,

acting through the commissioner of hospitals, with the petitioners for the preparation by them of preliminary drawings and specifications for the proposed Queens General Hospital. Subsequent to this approval and on May 13, 1929, the preliminary contract was executed between the parties.

In accordance therewith, the petitioners prepared and submitted preliminary drawings, specifications and estimate for a building costing $3,500,000. The preliminary plans and drawings were approved on or about August 5, 1929, by both the commissioner of hospitals and the art commission.

On October 29, 1929, a final contract was made and entered into between the parties. The petitioners thereunder agreed to prepare complete plans and specifications and supervise the construction and equipment of the new Queens General Hospital, for which work the city of New York agreed to pay the petitioners as full compensation therefor certain fees, less the sum or sums paid to them under the preliminary contract. The fees agreed upon are as follows:

" (a) Five per cent (5%) of the total cost of the structure, fit, complete and ready for occupation and use, within the estimated cost aforesaid, plus two and one-half per cent for reconstruction work.

" (b) As additional and cumulative compensation and for the employment by the Architect of engineering specialists two and one-half per cent (2½%)· of the total cost of the heating and ventilating work, plumbing, electrical and refrigerating work, power plants and apparatus, appliances, appurtenances, fixtures and equipment, including such fixtures, fittings, cooking appliances and the like as may be necessary and proper to render the work, building or structure complete and ready for service and use, within the estimated cost aforesaid."

The answering affidavit sets forth that the construction and equipment contracts have been awarded; that they total the sum of $3,520,000, and that additional work under the contracts authorized by the department of hospitals amounts to the sum of $117,942.18; that between October 20 and December 31, 1932, petitioners rendered statements to the department of hospitals aggregating the sum of $12,223.34, and that from January 13 to April 27, 1933, the petitioners rendered further statements aggregating the sum of $4,990.24.

The appellant contends that many of these statements show on their face that the architects are claiming a fee on extra work performed by contractors and which was not included in the tesimated cost of $3,500,000.

By paragraph 2 of the final contract it is provided: " The Architect will fully furnish and perform the services as Architect in the design or construction of the said proposed structure, described at the head of this agreement, and the heating, lighting, power plants, including ventilation, sanitary, mechanical and electrical arrangements and appliances and also prepare form of proposal for bids and form of bid for the work to be constructed, and will provide and furnish to said Commissioner, complete plans, elevations, sections and drawings of the exterior and interior and complete working drawings, with construction details sufficiently shown, and with figured dimensions given so as, with the specifications to be furnished as hereinafter required, to enable prospective bidders and contractors to make accurate and reliable estimates of the quantities, quality and character of the several kinds of labor required to erect and complete the said structure and equipment in a first-class workmanlike manner, and for the purposes and uses intended, within the estimated cost aforesaid, unless an increased estimate of cost be approved and funds therefor be made available by the Board of Estimate and Apportionment."

The petition herein fails to show that the amount of the estimated cost of this building has not been exceeded, or that an increased estimate of cost was approved, or that funds therefor were made available by the board of estimate and apportionment as required by the final contract.

The mandamus order appealed from directs that: " J. G. William Greeff, Commissioner of Hospitals of the City of New York, is directed to have the statements as rendered by the petitioners herein audited, and to forward vouchers for the same to the Department of Finance for disposition."

No power is vested in the department of public welfare, the department of health, or the trustees of Bellevue and Allied Hospitals (Greater N. Y. Charter, chap. XIII, tits. 1 and 2; chap. XIX, tit. 1) to audit or to have audited any bills, statements or demands against the city of New York.

The only obligation that may be placed upon the department of hospitals is to transmit the statements rendered to it by petitioners. There is nothing the commissioner of hospitals could do if the bureau of audit should refuse to audit any statements or vouchers of account he might forward.

The order appealed from in this proceeding not only attempts to direct a legal impossibility, but requires the approval of " the statements as rendered by the petitioners," thus overriding the discretion of the commissioner of hospitals and the bureau of audit in the department of finance.

The auditing of accounts against the city of New York is the function of the comptroller through the bureau of audit in the finance department (Greater N. Y. Charter, § 151, as amd. by Local Laws of 1930, No. 2). Under subdivision 2 thereof a bureau of audit is provided for, as follows: "A bureau of audit, which, under the supervision of the comptroller shall audit, revise and settle all accounts in which the city is concerned, as debtor or creditor, the chief officer whereof shall be called chief auditor of accounts."

The right to mandamus in such cases has been considered and fully reviewed in *People ex rel. O'Brien* v. *Butler* (120 App. Div. 751); *People ex rel. Lentilhon* v. *Coler* (61 id. 223; appeal dismissed, 168 N. Y. 6); *People ex rel. Mullen Cont. Co., Inc.,* v. *Craig* (114 Misc. 216).

The board of education is the only exception to that rule. That board is permitted by law to audit claims, subject in some instances to certain rights lodged in the comptroller, who must have funds to meet the claims so audited before payments are made.

The cases relied upon by respondents involved an audit by the board of education which is an independent board. They have no application to any other department of the city of New York. The reason for such a distinction is pointed out in the cases on that subject. (*People ex rel. Wells & Newton Co.* v. *Craig,* 232 N. Y. 125; *Matter of Brennan* v. *Board of Education,* 245 id. 8.)

The petitioners are not entitled to a peremptory or alternative order of mandamus. The order of the Special Term should be reversed, with twenty dollars costs and disbursements, and the motion denied, with fifty dollars costs.

FINCH, P. J., TOWNLEY, GLENNON and UNTERMYER, JJ., concur.

Order reversed, with twenty dollars costs and disbursements, and motion denied, with fifty dollars costs.